### GLEASON v. DOSCH et al.
### Patent Appeal No. 2299.

Court of Customs and Patent Appeals.
April 14, 1930.

Denison & Thompson, of Syracuse, N. Y. (Eugene A. Thompson, of Syracuse, N. Y., and T. K. Bryant, of Washington, D. C., of counsel), for appellant.

Elwood Hansmann, of Chicago, Ill. (Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Locke and Dosch, the appellees, filed their application for a patent on improvements in lubricating apparatus, September 20, 1920. On April 18, 1922, the appellant, Gleason, filed his application covering the same subject-matter, and a patent was issued to him, Serial No. 1,553,768, on September 15, 1925. Thereafter, on November 17, 1925, the appellees copied claims 1, 3, and 7 of appellant's patent, for purposes of interference. The appellant then moved to dissolve the interference on the grounds that the copied counts did not read on appellees' disclosure. The motion was denied by the Law Examiner and the Examiner of Interferences, no evidence being offered by either party, awarded priority to Locke and Dosch on all the claims. On appeal to the Board of Appeals, this decision was reversed as to said claim 3, renumbered as count 2 of the interference, and was affirmed as to claims 1 and 7, renumbered as counts 1 and 3 of the interference. Gleason has appealed from that decision, and argues here that said counts 1 and 3 do not read on appellees' disclosure. Said counts are as follows:

"1. A lubricating system comprising a receptacle for lubricant, a conduit leading therefrom to a part to be lubricated, an air chamber, a valve casing interposed in said conduit, a valve in said casing adapted to normally cut off communication between the receptacle and the air chamber, a second valve movable with the first named valve and normally held in position, permitting communication between the air chamber and the part to be lubricated, means for forcing lubricant from the receptacle into said conduit to move said valve to open communication between the receptacle and the air chamber and instantaneously close communication between the air chamber and the part to be lubricated whereby said air chamber is charged with lubricant backed by air under pressure, means for shifting said valves simultaneously when the pressure on the lubricant from the receptacle is released to close communication between the receptacle and the air chamber and open communication between the air chamber and the part to be lubricated, whereby the lubricant is gradually forced to the part to be lubricated solely by the trapped air under pressure after communication between the receptacle and the air chamber has been cut off.

"3. In a lubricating system comprising a source of lubricant a conduit leading therefrom to a part to be lubricated, means for

forcing lubricant into said conduit under pressure, and means in connection with the conduit, and including an air chamber for receiving lubricant under pressure from said conduit, whereby air is trapped and compressed in said chamber at the rear of the lubricant, and means permitting discharge of lubricant from said air chamber under the action of the air compressed therein only when communication is cut off between the air chamber and the source of lubricant."

There is considerable argument here about the differences between the Gleason device and the Locke and Dosch mechanism. This is beside the question. The only matter at issue is whether the claims read on Locke and Dosch. If they do, appellees, the senior parties, were entitled to make them.

The subject-matter of the invention is a machine, preferably an automobile, where lubrication is provided as it is needed. This is accomplished by a motor-driven pump which forces lubrication, at certain intervals, into the various bearings. In describing the portion of the device in question here, the specifications of appellees state:

"One form of such a means we have illustrated in the arrangement shown in Figs. 12 and 13 in which a body member 71, which may be connected in the line of piping preferably adjacent the bearing to be lubricated, has formed therein a laterally disposed chamber 72. Within the central cavity of the member 71 is a sliding valve 73 normally held in the position shown in Fig. 12 by a spring 74. The valve 73 is so arranged in relation to the chamber 72 and its connection with the central cavity of the body member 71, that the valve 73 in effect works between two valve seats, one of which may be designated as the portion 75 of the member 71 and the other as the portion 76 of the member 71. It will be seen that, in the position shown in the drawings, the valve 73 is seated against valve seat 75, so as to close the pipe against the flow of fluid in the direction of the arrow in Fig. 12 until the pressure of such fluid is great enough to overcome the pressure of the spring 74. When the valve is in this position, it is above the seat 76, so as to connect the chamber 72 with the central cavity. This would permit any fluid in the chamber 72 to flow out into the central cavity and finally out of the end 77. When the valve 73 is moved to the left of Fig. 12, however, so that it seats itself against the seat 76 by sliding longitudinally in the central cavity, the valve illustrated is long enough to first cut off the chamber 72 from all connection with the cen-

tral cavity and finally, by the further motion to the left of the valve 73, to open the chamber 72 to the end 78 of the valve body, thus permitting fluid to flow from the end 78 into the cavity 72."

Further, in explaining the operation of this portion of the device, the specifications recite:

"When, in the course of the turning of the plate 42, one of the openings 43 registers with the end of one of the pipes, then the pump pressure is transmitted to the lubricant in the pipes, causing the measuring valve to operate to cut off the chamber 72 from the bearing, and by virtue of this motion tend to force any lubricant which remains in the central cavity of the valve body 71, which has not yet flown to the bearing, into the bearing. As soon as the chamber 72 is in communication with the lubricant in the pipe, the chamber will be filled or nearly filled according to the amount of air therein, and the valve 73 will remain in this position until the continued motion of the plate 42 has closed the distributer valve 32. Then valve 73 returns to its initial position, and the lubricant in the chamber 72 may flow into the bearing."

■ Appellant argues that appellees' device shows no air chamber. The latter portion of the specifications above quoted plainly discloses such a chamber. An inspection of their drawings also shows it. It is true, the chamber is of different shape, and appears to be smaller, but such distinctions are not patentable if they perform the same functions. In re Draper, 10 App. D. C. 545; In re Williams, 36 F.(2d) 436; Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; O'Reilly v. Morse, 15 How. 62, 123, 14 L. Ed. 601.

It is also urged that appellees' valve 73 will not "instantaneously close communication between the air chamber and the part to be lubricated." It is quite apparent that some period must elapse while this valve is traveling to its seat 76, and that during that period it will push lubricant forward into the outlet pipe. Exactly the same process occurs in appellant's device as the valve 13b moves forward to its seat. The difference is only one of degree, not in the process. On the stroke of the pump, in both cases, lubricant is forced to the bearing by the valve.

Finally, it is insisted that the valve 73 of appellees' disclosure will not return to its valve seat 75 when oil ceases to flow into the pipe 78; that the plate 42 having revolved, and the orifice 43 being closed, the pressure within the valve chamber will remain fixed and the tension of the spring will not be sufficient to return the valve 73. It is plain, from appellees' specifications above quoted, this valve is expected to return. The Board of Appeals held that experience had shown that, in all ordinary cases, leakage between the piston-like valve 73 and its surrounding walls would occur, and that such leakage would permit the gradual return of the valve. We agree with this conclusion. It is a matter of common knowledge that even in the most accurately machined pistons in internal combustion engines expansive piston rings are provided to attempt to stop such leakage. As soon as the valve returns, the trapped air will feed the lubricant to the bearing as needed.

■ It is contended by appellant that the appellees' device is inoperative. If so, appellant had the opportunity to show this by evidence in the interference. We agree with the statement made by the Commissioner in Bowditch v. Todd, 1902 C. D. 27:

"The objection of inoperativeness is one which should not be insisted upon except in a clear case, particularly where the application is involved in an interference in which the matter may be fully investigated and in which testimony may be produced throwing light upon the subject. This Office has no means of its own for investigating the question of operativeness and in case of doubt should leave the matter to be determined after testimony is taken in the interference."

Certainly, we are in no better position here than the office was in that respect. A statement in Fowler v. Dodge, 14 App. D. C. 477, well expresses our views:

"It would serve no good purpose to supplement the opinion of the primary examiner in this case with another opinion on the same question of operativeness. The controversy is reduced to a very narrow compass. The examiner of interferences, in the first instance, held the device to be operative. The board of examiners and the Commissioner suggested, rather than expressed, doubt, but proceeded to decide the cause upon the assumption of operativeness. Now again it has been referred to the proper officer, the expert of the office, to examine into this precise question anew; and he holds the device to be operative. Certainly, the preponderance of testimony is in favor of the operativeness of the device; and it is not usual for the courts to disturb the conclusions of the Patent Office upon any such question as that

without very cogent proof of error. We find no such proof in this case." ,

The decision of the Board of Appeals is affirmed.

Affirmed.