## ROWE v. HOLTZ.
### HOLTZ v. ROWE.
Patent Appeals Nos. 2891, 2892.

Court of Customs and Patent Appeals.
Feb. 8, 1932.

O. H. Eschholz, of East Pittsburgh, Pa. (R. E. Marine and O. B. Buchanan, both of Pittsburgh, Pa., Wesley G. Carr, of East Pittsburgh, Pa., and Jo Baily Brown, of Pittsburgh, Pa., of counsel), for appellants.

Charles E. Tullar, of Schenectady, N. Y. (Alex D. Salinger, of Boston, Mass., and Russell A. Warner, of Schenectady, N. Y., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appeals at bar are both from a decision by the Board of Appeals of the United States Patent Office in an interference in which priority of invention was awarded to Holtz as to counts 3 and 6, and to Rowe as to counts 1, 2, 4, and 5. Holtz appealed from the decision of the Board awarding to Rowe priority of invention of the subject-matter of counts 1, 2, 4, and 5, of which count 1 is illustrative, and follows: "1. A single-phase induction motor comprising a stator member having split poles and shading coils on the trailing sections of said split poles, and a rotor member comprising a magnetizable core member having open slots providing a larger number of poles than said stator poles and a squirrel-cage winding comprising conductors disposed in said rotor slots, the parts being so designed that the rotor poles lock into synchronism with the stator poles at a sub-synchronous speed."

Rowe appealed from the same decision of the Board in the same interference, which awarded priority of invention to Holtz of the subject-matter of counts 3 and 6, of which count 3 is illustrative and follows: "3. An induction reaction motor having a salient pole primary member and a salient pole secondary member, an induction motor secondary winding on said secondary member, the salient poles of said secondary member constituting a reaction motor secondary having a greater number of poles than the primary member said secondary member being so de-

signed that the reaction motor torque at the synchronous speed corresponding to the pole number of the secondary is in excess of the induction motor torque at said speed, whereby said motor is capable of simultaneously operating as an induction motor and a reaction motor at a synchronous speed corresponding to the number of poles of the reaction motor secondary."

The invention involved relates to what is known as subsynchronous electric motors, used in connection with operating time switches, clocks, and different kinds of timing devices, which motors constituted the subject-matter involved in interference No. 55,103, decided by this court concurrently herewith in patent appeal No. 2890, 55 F.(2d) 465.

While the three appealed cases have been separately briefed, there is but one record, and the same testimony of the respective parties has been filed in both interferences, and is relied upon to prove the respective contentions of the parties. Both appeals in the instant interference will be decided in one opinion.

In appeal No. 2890, interference No. 55,103, there were involved an application of Rowe filed April 29, 1922, and an application of Holtz which was filed October 1, 1921. There, Rowe was the junior party. The present interference involves the same application of Rowe but an application of Holtz filed December 18, 1923, which later application of Holtz relates to the same general kind of motor as his former application, but is directed particularly to certain structural features which, for the purposes of this decision, may be regarded as not disclosed or claimed in the first application. Holtz is the junior party in this interference. The fact that one party is senior in one interference and junior in the other interference apparently accounts for the declaration of two interferences.

In this interference, unlike the companion interference, the decisions of the Examiner of Interferences and the Board concur upon each of the issues decided. The Examiner of Interferences and the Board gave Holtz a date not later than October 27, 1919, as the date of conception, and April 8, 1921, as the date of reduction to practice, of the invention of counts 3 and 6, and November 14, 1921, as the date of conception and reduction to practice of invention of counts 1, 2, 4, and 5. The Examiner of Interferences gave Rowe October 27, 1921, as the date of conception and reduction to practice of all the counts, and on the basis of these dates held that Holtz was the first to conceive and

reduce to practice the invention involved in counts 3 and 6, and that Rowe conceived and reduced to practice the invention involved in counts 1, 2, 4, and 5, prior to Holtz' date of conception. The Board of Appeals, without discussing the questions at length, agreed with the Examiner of Interferences in his interpretation of the counts, and in the dates awarded to the parties for conception and reduction to practice, and in his award of priority of invention.

We will first dispose of the appeal in which Holtz is appellant.

In this court it is urged by Holtz that he is entitled to a date of conception for counts 1, 2, 4, and 5 (which were awarded to Rowe), of June, 1919, or at least as early as October 31, 1919, and bases his argument chiefly upon Holtz' Exhibit 1, which consists of drawings and notes dated June 15, 1919, which, he states, shows a four-pole, squirrel-cage rotor, meeting the requirement of the counts. He contends that, when it was shown that he made this sketch and explained it to one Anderson, he had proved conception.

It will be noticed that in the companion interference, No. 55,103, Rowe was claiming a date for his conception of the invention involved in that interference which was prior to August 11, 1919, when he had used an aluminum cup rotor. In that interference, Holtz did not need to claim an earlier date than that allowed him by the Board, October 27, 1919, unless Rowe was given his earlier claimed date. In that case, however, Holtz did make claim to June 15, 1919, for his date of conception in event Rowe was given his earliest claimed date. The court did not find it necessary to go into the question as to whether or not Holtz was entitled to June 15, 1919, since it did not give Rowe his earliest claimed date.

In the case at bar, if Holtz wins his appeal as to counts 1, 2, 4, and 5, he not only must be allowed the early date claimed, but it must also be held that he was diligent from a time just prior to Rowe's conception (October 27, 1921), until November 14, 1921, which is the date of reduction to practice by Holtz.

The Examiner of Interferences in his decision in this interference, with respect to Exhibit 1 and the early claimed date of conception of Holtz, said: "The sketch (Exhibit 1) which was drawn by Holtz for Anderson on June 15, 1919, does not prove that Holtz was in complete possession of the invention defined in counts 3, 4, 5 and 6, as alleged by Holtz, for the same reason that said sketch

does not amount to complete conception of counts 1 to 6 and 8 to 13 of the companion interference and as pointed out therein."

In the companion interference, No. 55,103, above referred to, the Examiner of Interferences discussed Holtz' Exhibit 1 and Exhibit A, and held against Holtz on his earliest claimed date of conception, and said:

"Holtz testified that he is an electrical engineer and was chief engineer of the Sangamo Electric Co. at the time the invention involved herein was conceived. The circumstances incident to this conception occurred in connection with the development of a KVA measuring device which required the use of a small self-starting synchronous motor. Holtz built a small synchronous motor (Exhibit A) for the equipment. This motor was tested by Holtz and an assistant named Anderson and it was found to be neither self-starting nor synchronous. The rotor of the first motor was bi-polar and upon its failure to start and to come up to synchronous speed Holtz drew a sketch (Exhibit 1) for Anderson on June 15, 1919, of a four-pole squirrel-cage rotor to be built up of soft iron laminations and to be used in the original stator of Exhibit A. Holtz was of the opinion that the data taken on the original structure indicated that such a rotor would probably operate satisfactorily. This rotor, however, was never constructed.  *  *  *

"Holtz contends that the disclosure of Exhibit 1 establishes conception as of that date of all the counts here involved except count 7. A complete conception as defined in an issue of priority of invention is matter of fact and must be clearly established by proof. It is not clear that Holtz at the time he disclosed Exhibit 1 to Anderson had a complete concept of the subject matter of the counts in issue. In answer to cross-questions 145 and 146 Holtz stated that he considered that a hardened steel star disc becoming permanently magnetized was an important or essential feature of the sub-synchronous motor design there under consideration. The motor, under consideration in XQ's 145 and 146, is not the same as the motor shown in Exhibit 1 which is being considered here but, in view of the above answer, it is believed that Holtz should have shown either, that it was not necessary to construct the rotor of the motor in Exhibit 1 of hardened steel, or, if a rotor were constructed of soft iron as indicated in Exhibit 1, it would function at least to some extent. In other words, it is not clearly established that if a rotor were constructed as disclosed in Exhibit 1 and inserted in the stator of Exhibit A, the structure unquestionably would be an operative device. Hence it does not establish conception of any of the counts. Where performance of the device is dependent on the material, the conception is not complete until the right material is ascertained."

In that interference it was not necessary for the Board to pass upon this evidence, inasmuch as it reversed the Examiner of Interferences on the early conception date given Rowe.

In the present interference, the Board of Appeals affirmed the Examiner of Interferences in not allowing Holtz the early date of conception based upon Exhibit 1.

It is argued by Holtz that the tribunals' findings against him on his claim for June 15, 1919, as the date of conception, result from a misunderstanding of the testimony or from the fact that they completely ignored the same. Holtz claims the testimony shows definitely that a hard steel rotor was not necessary for the proper operation of the motor, and that soft steel was preferred, and that at any rate neither the counts in interference nor either of the applications are in any way restricted to hard material. It is argued that the exhibits referred to are only relied upon for conception and not for reduction to practice, and that the holding of the Examiner of Interferences that a rotor constructed as is shown in Exhibit 1, and inserted in the stator of Exhibit A, would not be an "operative device," is holding Holtz to an operative test which is required in reduction to practice, but which is not required for conception.

With respect to this feature of the case, we are of the opinion that the exhibit and the explanation of the same to Anderson would not afford sufficient evidence of conception of the invention of the counts at bar, if, when the rotor had been constructed in accordance with such teachings and inserted in the stator of Exhibit A, it failed to function under such circumstances as are shown in this case. If something else had not been conceived and done which was not then within the contemplation of the inventor, it is obvious that the invention in controversy would not have been produced. As to whether Holtz, in June, 1919, had fully performed the mental part of the invention by conceiving a device responding to the counts which, when constructed, would operate in the manner provided by the counts, we are constrained to be guided in our conclusion by the concurring findings of the tribunals below.

The question involves highly technical matters of electrical engineering, and we can-

not say that the tribunals below were clearly in error in their findings. In re Wietzel et al., 39 F.(2d) 669, 17 C. C. P. A. 1079, 1082; Gleason v. Dosch et al., 39 F.(2d) 687, 17 C. C. P. A. 1012. Furthermore, it seems to us that, if Holtz had a full conception of a motor responding to the counts at bar in June, 1919, he would not have embarked upon the invention and construction of the star-plate rotor upon which he was awarded priority in the companion interference case.

Conception is defined in Robinson on Patents, § 376, as follows: "The conception of the invention consists in the complete performance of the mental part of the inventive act. * * * All that remains to be accomplished, in order to perfect the art or instrument, belongs to the department of construction, not creation. It is thus the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."

In Mergenthaler v. Scudder, 11 App. D. C. 264, 279, with reference to conception, the court said: "If drawings be exhibited and relied on, as evidence of the conception of the invention, they must show a complete conception, free from ambiguity or doubt, and such as would enable the inventor or others skilled in the art to reduce the conception to practice without any further exercise of inventive skill."

While no authorities based upon a state of facts identical with those at bar have been found, we think Glidden v. Noble, 5 App. D. C. 480; Mergenthaler v. Scudder, supra; Appert v. Schmertz, 13 App. D. C. 117; and Deering v. Winona, 155 U. S. 286, 301–302, 15 S. Ct. 118, 39 L. Ed. 153, support the view that Holtz did not conceive the invention involved in the counts at bar in June, 1919.

Since Rowe was first to conceive and first to reduce to practice the counts in issue in this appeal, it is not necessary to consider the diligence of Holtz, and the Board of Appeals properly awarded priority to Rowe therein.

We will now take up the appeal of Rowe, in the same interference, No. 55,104, from the action of the Board of Appeals in awarding priority to Holtz in the invention of counts 3 and 6.

Both of the counts originated in the Holtz application and the limitations and particular structure involved in this appeal are, we think, sufficiently set out in the claims.

The Examiner of Interferences held that Holtz conceived on October 27, 1919, and reduced to practice April 8, 1921. Rowe was given October 27, 1921, as the date for both conception and reduction to practice. As will be noted in the statement of the case, supra, as to counts 3 and 6 Holtz was held to have conceived the invention and reduced the same to practice before Rowe had conceived the same.

In view of our holding in appeal No. 2890, the only issue involved in this interference is the interpretation of the counts. If the concurring tribunals below have correctly interpreted the counts, their action in awarding priority must be approved.

The character of the claims with reference to limitations and lack of limitations is referred to and discussed in the opinion of the Examiner of Interferences. The views of the Examiner of Interferences were approved by the Board of Appeals. The Board said: "We agree with the examiner of interferences that counts 3 and 6 are broadly worded and that Holtz is entitled to October 27, 1919, for conception of counts 3 and 6 for reasons similar to those upon which we held Holtz entitled to this date for conception of certain counts in the companion interference. The successful tests of the star-plate motor on April 8, 1921, constitutes a reduction to practice of counts 3 and 6."

Since we approve of what the Examiner has said with reference to the character of the claims and the interpretation they are to be given, we do not feel called upon to further comment on this phase of the case.

The date of October 27, 1919, which was awarded to Holtz for conception, is the conception date awarded Holtz in the companion interference for all the counts there involved, except count 7, and we think on that date, which is the date of conception of the star-plate motor, he conceived the invention of the counts herein involved. When this fact is conceded, there is no question as to who is entitled to priority.

The decision of the Board of Appeals, awarding priority of invention to Holtz as to counts 3 and 6 in this interference, was proper and should be affirmed.

We hold that the decision of the Board of Appeals awarding priority of invention in counts 1, 2, 4, and 5 to Rowe and in awarding priority of invention in counts 3 and 6 to Holtz was proper, and the same is affirmed.

Affirmed.