## ROWE v. HOLTZ.*

### Patent Appeal No. 2890.

Court of Customs and Patent Appeals.

Feb. 8, 1932.

See, also, 55 F.(2d) 468.

O. H. Eschholz, of East Pittsburgh, Pa. (R. E. Marine and O. B. Buchanan, both of Pittsburgh, Pa., Wesley G. Carr, of East Pittsburgh, Pa., and Jo Baily Brown, of Pittsburgh, Pa., of counsel), for appellant.

Charles E. Tullar, of Schenectady, N. Y. (Alex D. Salinger, of Boston, Mass., and Russell A. Warner, of Schenectady, N. Y., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference proceeding involving priority of invention of 13 counts relating to subsynchronous motors.

The Board of Appeals of the United States Patent Office awarded all 13 counts to Holtz, which was an affirmation of the Examiner of Interferences' decision as to counts 2, 7, 11, and 12 and reversal of his decision as to the remaining counts.

*Rehearing denied March 28, 1932.

Counts 1 and 7 are illustrative and follow:

"1. A self-starting synchronous motor comprising cooperating stator and rotor elements, means associated with said stator element for producing a strongly pulsating, shifting magnetic field through said rotor element, a short-circuited current path on said rotor element for producing induction motor action, and a magnetic circuit on said rotor element designed to give the rotor a predominating reactance characteristic at an operating speed where considerable induction motor action exists."

"7. A self-starting, single-phase synchronous motor comprising a field member having split salient poles and a shading coil on one portion of each pole, and an open-slot, squirrel-cage secondary member cooperating therewith in such manner that the teeth between the slots cooperate with the portions of the split poles to cause the motor to operate, under normal load conditions, at a synchronous speed less than the induction-motor speed."

Holtz' application was filed October 1, 1921, and Rowe's was filed April 29, 1922, Rowe being the junior party. Both parties took testimony. Two electrical manufacturing companies are the assignees of the applications, and are the real parties in interest in the appeal.

The record shows that both parties were attempting to develop for their respective companies a small, self-starting, subsynchronous motor suitable for driving demand-meter attachments, and for general timing purposes such as in clocks; that prior to such inventions a full synchronous motor had been used for such purposes, and that it was unsatisfactory because it operated at a very high rate of speed, i. e., one revolution for each cycle, or 3,600 revolutions per minute on 60-cycle current circuits; that this great speed caused the motor to quickly deteriorate; that it was necessary to incase the motor in oil, and, when so incased, leakage and other undesirable conditions resulted.

The Examiner of Interferences describes the invention in the following language: "The subject matter of this interference relates to small alternating current motors which start as an induction motor but lock into step at a fairly low synchronous speed with ample torque for driving timing devices. The stator of the motor is of the usual single-phase construction having two poles on portions of which are mounted shading coils to make the alternating flux shift in the direction in which rotation is desired. The rotor

upon which this alternating shifting flux operates comprises a squirrel cage winding, or its equivalent, and a polar magnetic structure. The number of salient poles of the latter is greater than the number of poles of the stator. The number of salient poles determines the speed of the rotor. The six-pole rotor operates at 1200 revolutions per minute and the twelve-pole at 600 revolutions per minute on a sixty-cycle alternating current circuit. These motors are used for operating time switches, clocks, and the timing devices of demand meters."

The Examiner of Interferences found that Holtz established conception of the invention on October 27, 1919, for all the counts except count 7, but held that Holtz must be limited for conception to December 1, 1919, because his preliminary statement, while alleging conception between June 1, 1919, and August 1, 1919, did not allege disclosure to others prior to December 1, 1919. This holding of the Examiner of Interferences involves the main point of law in this case, which question, for the most part, controls the decision. The Examiner of Interferences gave Holtz April 8, 1921, as the date of conception and reduction to practice of count 7, and held that Holtz was entitled to December 22, 1919, as the date of reduction to practice of counts 8, 9, and 11, and that April 8, 1921, was the date of reduction to practice of all counts (this being a second reduction to practice of counts 8, 9, and 11). The Board disagreed with the finding of the Examiner of Interferences as to the conception date to be allowed to Holtz (December 1, 1919).

Holtz also claimed to have conceived the invention on June 15, 1919, and for proof relies on Exhibits 1, A, 2, 3, and 9, as corroboration of his own testimony on the subject. Neither tribunal below allowed this date.

The Examiner of Interferences gave Rowe as a date of conception, November 14, 1919, for counts, 1, 3, 4, 5, 6, 8, 9, 10, and 13, and October 27, 1921, for counts 2, 7, 11, and 12, and for conception held Holtz restricted to December 1, 1919, and held that Rowe was diligent from the date of his conception until the date of his reduction to practice, which was October 27, 1921, and which was after the date of reduction to practice allowed Holtz.

The Board of Appeals, having given Holtz October 27, 1919, as the date of conception of all the counts except count No. 7, the question of diligence was not involved, since Holtz, as to these counts, was first to conceive and first to reduce to practice.

Both tribunals gave Rowe the date of October 27, 1921, as a reduction to practice of all counts, and Holtz was, by both tribunals, given a date of reduction to practice of counts 8, 9, and 11 of December 22, 1919, and as to count 7 and the remaining counts April 8, 1921.

In this court Rowe has argued at great length that he should have August 8, 1919, as the date of conception, basing his argument upon a motor with an aluminum rotor with four slots in the periphery, which was built and tried out, according to Rowe's contention, on or before August 8, 1919. He then contends that he has shown diligence from that date until his reduction to practice, which entitles him to priority of most of the counts in the interference.

This evidence was carefully considered by the Examiner of Interferences and thoroughly discussed in his decision. The Board of Appeals, without detailed discussion, approved the holding of the Examiner of Interferences in rejecting this proof as not being satisfactory evidence of conception, and in awarding to Rowe as his earliest date of conception November 14, 1919.

We agree with the two concurring tribunals that the evidence relied upon by Rowe for his earliest claimed date of conception is not satisfactory, and does not establish conception on a date earlier than November 14, 1919.

Another issue involved in the case is whether count 7 reads upon the Holtz application. Count 7 relates to an open-slot squirrel-cage secondary member, co-operating with a field member in such manner that the teeth between the slots co-operate with the portions of the split poles to cause the motor to operate, under normal load conditions, at a synchronous speed less than the induction-motor speed. The Law Examiner, the Examiner of Interferences, and the Board of Appeals held that Holtz could make the count, after Rowe had moved to dissolve the interference on the ground that Holtz could not make it. The claim was inserted in the Holtz application upon the suggestion of the Patent Office.

As we view the case, the decision of the issue as to all the counts except count 7 depends upon the correctness of the board's ruling that Holtz was entitled to the date of October 27, 1919, as the date of conception of all counts except count 7, since if he was first to conceive and first to reduce to practice, he is entitled to priority. It will not be necessary for us to discuss the facts and the law on this question to any great length.

They were thoroughly discussed by both tribunals.

The Examiner of Interferences was in agreement with the Board that Holtz had conceived the invention on October 27, 1919, but, since he did not disclose it to others, found that he was not entitled to such a date for the purposes of the interference. The Board of Appeals, following the reasoning of the Examiner of Interferences, found that he had conceived the invention on October 27, 1919, and found that it was not necessary for him to show a verbal disclosure of it to others, if the fact that he had conceived it was otherwise satisfactorily proved. Concerning the holding of the Examiner of Interferences with respect to the necessity of corroborating testimony of other witnesses as to disclosure, the Board said: "The examiner of interferences appears to be of the opinion that an applicant's allegation of conception can be established only by the corroborating testimony of other witnesses and that it can not be established as of a date prior to his disclosure to others. Such holding is in line with the practice of this office prior to 1910 of holding a party for date of conception to the date alleged in his preliminary statement for disclosure to others. This practice, however, was overruled by the Court of Appeals of the District of Columbia in Peters v. Hopkins and Dement, 1910 C. D. 278. * * *"

The Board then quotes from Peters v. Hopkins, 34 App. D. C. 141, and discusses and quotes from Mergenthaler v. Scudder, 11 App. D. C. 264; De Forest v. Meissner et al., 54 App. D. C. 391, 298 F. 1006; and Armstrong et al. v. De Forest Radio Telephone & Telegraph Co. (D. C.) 279 F. 445, and Id. (C. C. A.) 280 F. 584. Following the rule laid down in the above-quoted decisions, the Board held that Holtz Exhibit Nos. 4 and 5, which were undated sketches bearing descriptive notes and showing the added star-plate to the rotor as disclosed in the Holtz application involved in this interference, constituted satisfactory evidence of conception and disclosure without the necessity of further verbal disclosure, and in deciding this question said:

"In his stipulated testimony Lanphier, president of the Sangamo Company, testifies that a small subsynchronous motor embodying the general characteristics of the Holtz apparatus disclosed in the applications involved in these interferences was conceived by Holtz in the summer of 1919.

"The Holtz exhibits Nos. 4 and 5 are undated sketches bearing descriptive notes and showing the added star-plate to the rotor as disclosed in the Holtz application involved in this interference. They support and are believed to constitute a satisfactory disclosure to one skilled in the art of all counts of the interference, except count 7, without further verbal disclosure. The sketches were given to Buoy with instructions to build the motor. Buoy's stipulated testimony is that the sketches, Holtz Exhibits 4 and 5, were given him a few days prior to October 27, 1919, by Holtz with request to construct a motor in accordance therewith and that his time records show that he worked on it nine hours on October 27, 1919, followed by work aggregating over 100 hours, and that the motor was completed on December 22, 1919.

"We agree with the examiner of interferences that the unimpeached evidence in behalf of Holtz establishes a conception of all the counts of this interference (except count 7) as early as October 27, 1919, but we do not concur in his technical ruling that the earliest date of conception that can be accorded Holtz, under the allegations of his preliminary statement, noted above, is December 1, 1919."

We agree with the decision of the Examiner of Interferences and the Board that Exhibits 4 and 5 are evidence of a full conception of the invention in all the counts of the interference except as to count 7, and we agree with the decision of the Board that the facts referred to by the Board, as is shown in the record, sufficiently established the conception of the invention of such counts as to entitle Holtz to the date of October 27, 1919, as the date of conception. The decisions of the District of Columbia Court of Appeals, cited by the Board, thoroughly support the board's conclusion as to the sufficiency of the conception on the part of Holtz on October 27, 1919. The principle announced in such decisions is fully approved by this court in Townsend v. Smith, 36 F. (2d) 292, 17 C. C. P. A. 647. The soundness of these decisions and the correctness of the Board's application of the same to the issue involved here is not seriously questioned in this appeal.

The test on the motor that was built by Buoy under the instructions of Holtz, and in accordance with the sketches of Exhibits Nos. 4 and 5, shows that the motor was not self-starting, and the Examiner of Interferences and the Board both found that the building of this motor was a reduction to practice of counts 8, 9, and 11 only, which counts are not limited to self-starting motors. At a later

date the star-plate of the Holtz motor was shifted on the shaft so that the projections on the star-plate would extend outside the field laminations, and slots were sawed in the rotor above and down to some of the rotor conductors. This motor was tested on April 8, 1921, and found to be self-starting and to operate successfully. The Board and the Examiner of Interferences found that this motor, which was tested on April 8, 1921, by Holtz, had the limitations of count 7 that is, an open-slot, squirrel-cage secondary member, not found in the other counts, and that it constituted a conception of count 7 and a reduction to practice of all the counts of the interference.

Since Holtz was the first to conceive and the first to reduce to practice of all the counts, he is entitled to an award of priority, and we agree with the decision of the Board in awarding priority of invention of all the counts to Holtz, and we also agree with the concurring decisions of the three Patent Office tribunals, for the reasons stated therein, that Holtz could make count 7, and the decision of the Board of Appeals is affirmed.

Affirmed.