42 C.C.P.A.(Patents)

**Application of Ernie L. LAUNDER and Chester C. Hosmer.**

**Patent Appeal No. 6110.**

United States Court of Customs and Patent Appeals.

April 28, 1955.

Mead, Browne, Schuyler & Beveridge, Washington, D. C. (Francis C. Browne, William E. Schuyler, Jr., and Andrew B. Beveridge, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting as unpatentable claims 18, 19, 23, 24, 25, 27 through 33, inclusive, and 35 through

39, inclusive, in appellants' application for a patent for a "Digger Tooth Mounting."

█ The Board of Appeals reversed the Primary Examiner, as to claims 20, 21, 22, 26, and 34 of the application and allowed them. These claims are therefore not before us on appeal, and will not be considered. In re Thompson, 143 F.2d 357, 31 C.C.P.A., Patents, 1121.

The alleged invention relates to the construction of a tooth of a digging implement such as a power shovel, scoop, or trenching machine. A tooth having the configuration of a wedge (having two converging faces and two parallel faces adjoining a rectangular base) has the base thereof affixed to the shovel proper. A cap having the shape of a wedge and having a wedge-shaped recess therein is adapted to slip onto said tooth in complementary mating relationship. A hole is formed in each of two parallel faces of the cap. These holes are in axial alignment. The tooth has a bore extending through it from one of its parallel faces to the other. When the cap is slipped onto the tooth, the holes in the cap are not in perfect alignment with the bore in the tooth. A pin is adapted to be forced through the holes and the bore, thus tending to force them into alignment, and thereby forcing the cap to fit snugly on the tooth. The pin is generally cylindrical in overall shape, and consists of two semi-cylindrical metallic members which are affixed to opposite faces of a piece of resilient material, such as rubber. Because of this construction, the resilient material of the pin is compressed when the tooth, cap, and pin are initially assembled. The inventive concept appears to be that the resilient portion of the pin will expand from its compressed condition and cause the cap and tooth to remain in tight contact as the inside of the cap and the outside of the tooth wear relative to each other in use.

Appellants have divided their appealed claims into four groups to facilitate discussion thereof. We will follow their form. Claims 24, 32, 37 and 30 are considered to be representative of each of the following groups under which they appear:

"Group I

"24. A structure of the character described including, an elongate forwardly convergent tooth having a transverse hole extending from one side to the other of the tooth, a cap over the tooth having a body and a housing defining a convergent socket receiving the tooth, the body projecting forward from the tooth and the housing having spaced sides overlying said sides of the tooth and *having holes in communication with the hole in the tooth,* and a pin entered in the hole in the tooth and in the holes in the housing and including *two like elongate sections each uniform in cross section throughout from one end to the other* and extending lengthwise of the pin and a resilient body between and connecting the sections substantially throughout the length of the pin maintaining *one section in forward pressure engagement with the tooth and the other section in rearward pressure engagement with the cap,* the pin corresponding in length with the width of the cap where the holes occur therein." [Italics added]

"Group II

"32. In combination, two members, one a male member and the other a female member with spaced parts receiving a part of the male member between them, there being holes in the said parts of the female member in communication with a hole in said part of the male member, and a pin including two relatively movable sections entered in said holes and resilient means between the sections yieldingly urging them apart with one section in pressure engagement with said part of the male member and the other section in opposite pressure engagement with the said parts of the female member."

"Group III

"37. In combination, two elongate members, the members having wedge faces cooperatively engaged by relative movement between the members lengthwise thereof, one a male member and the other a female member with spaced parts receiving a part of the male member between them, there being holes in the said parts of the female member in communication with a hole in said part of the male member, and a pin including two relatively movable sections entered in said holes and resilient means between the sections yieldingly urging them apart with one section in pressure engagement with said part of the male member and the other section in opposite pressure engagement with the said parts of the female member, the pin operating the members to maintain said faces cooperatively engaged and corresponding in length to the width of the female member where the holes occur therein and the ends of the pin being substantially flush with the outer sides of said parts of the female member."

"Group IV

"30. A retainer pin of the character described including, two like coextensive longitudinal sections each substantially half round in cross sectional configuration and each uniform in shape from one end to the other, and a single elongate body of rubber between and completely separating the sections and extending from one end of the pin to the other and active to urge the sections apart, the body of rubber being narrower than the sections where they are engaged by the body, the longitudinal edges of the body being spaced inward from the exterior of the pin."

The references which were relied on are: Shaffer, 1,837,341, Dec. 22, 1931; Crawford, 2,259,456, Oct. 21, 1941; Terry, 2,279,960, Apr. 14, 1942; Robertson, 2,435,847, Feb. 10, 1948.

The Crawford patent discloses a device which is called a "bucket tooth unit." In the Crawford structure a wedge-shaped portion of a tooth is adapted to fit into the hole of a wedge-shaped cap in complementary mating relationship. These wedge shapes are of substantially the same configuration as those disclosed in appellants' application. The base of the tooth in the vicinity of the broad portion of the wedge is cut away to form a shoulder. The cap has an overhanging extension on its rear portion. When the cap and tooth are in assembled relationship, the overhanging portion of the cap and the shoulder and another portion of the tooth form a wholly enclosed space or groove. A key is adapted to fit into this space to hold the cap on the tooth. The key broadly consists of two metallic members separated by resilient material. One portion of the key bears against the shoulder formed by the base of the wedge while the other portion of the key bears against the overhanging portion of the cap. The resilient material of the key is compressed when the members are assembled, and the key locks the cap on the tooth.

The Terry patent, insofar as pertinent here, discloses a steel retainer key which is generally oval in cross section. The key is formed of two metallic halves which are separated by a strip of resilient material. One end of the key is bevelled and the other end has a lateral wing affixed thereto which acts as a stop member. The key is not used in the same environment as applicants' key since the Terry patent discloses the use of the key in a rock drill.

The patent to Shaffer discloses a digging tooth which is generally wedge-shaped. The tooth has two converging surfaces and two opposing surfaces which are tapered toward each other. Keyways are formed in the converging surfaces. A cap is provided for the tooth. The cap has keys formed therein, and is adapted to fit on the tooth in complementary mating relationship. When the

cap and tooth are assembled, a bolt is placed through aligned holes in the tooth and cap to secure them.

The patent to Robertson, insofar as pertinent here, shows a shovel tooth. A cap is adapted to be placed on a wedge-shaped tooth in complementary mating relationship. A tapered pin and split bushing are inserted through aligned holes in the tooth and cap to secure these members.

The examiner rejected all of the claims now under consideration in Groups I, II, and III as being unpatentable over Robertson and Shaffer in view of Crawford and Terry. He stated that no invention would reside in providing a retaining key of the type shown by Terry or Crawford to maintain the cap on the shank of the structure shown by either Robertson or Shaffer. He further stated that the differences "between the proposed arrangement of structure and the device claimed by appellants, would be but a feature of design or a mechanical expedient well within the skill of the excavating art and devoid of invention." The examiner rejected the claims of Group IV for the reason that the patent to Terry substantially met the claims. He applied the reference to the claims and pointed out that, in his opinion, any differences between the two were due merely to mechanical skill.

The board affirmed the examiner's rejection of the claims here on appeal, and stated, after a complete analysis of all facets of the case, that it was of the opinion that these claims were unpatentable over the references relied on by the examiner. The board particularly analyzed the Crawford patent, and stated that the recess formed by the cap and tooth in combination with the pin inserted into said recess was the mechanical equivalent of appellants' communicating holes in the cap and tooth with the resilient pin occupying such holes since the arrangement in the reference performed substantially the same function as applicants' structure and accomplished substantially the same result. The board also stated, relative to the claims which it felt to be unpatentable, "It is true that Crawford's resilient pin would not ordinarily take up wear between the cap and tooth because the sides of the cap are maintained against the abutments 5, but we fail to find in the claims any structure defining over the reference whereby such function is possible." The board also sustained the examiner's rejection of the claims directed to a resilient key (Group IV) for substantially the same reasons presented by the examiner.

Before reviewing the above rejections, we deem it necessary to point out the relationship between the claims of Groups I, II, and III. This can best be done by quoting directly from appellants' brief as follows:

"The claims of Group II are similar to those in Group I except that the two members to be connected are defined in the claims in Group II as male and female members rather than being defined as a tooth and cap. Otherwise, the claims in Group II include the critical limitations such as the pin including two relatively movable sections with one section in pressure engagement with the male member and the other section in opposite pressure engagement with the female member.

"The claims in Group III are generally similar to the claims in Groups I and II but define the male and female members as having wedge faces cooperatively engaged by relative movement between the members lengthwise thereof."

It can be seen from this description that the claims will stand or fall as a group. We will therefore only treat claim 24 specifically, the limitations which differentiate over the Crawford patent being shown in the italicized portions of the claim.

■ The first of the italicized portions of the claim recites the presence of holes in the cap and tooth whereas the Crawford reference shows a wholly enclosed space or groove. Appellants argue that this difference is patentable. How-

ever, both Shaffer and Robertson show the hole structure, as recited in the claims. Furthermore, it must be noted that the references were used in combination by the examiner. Thus since the aligned hole feature is a common expedient in the prior art, we do not see how the claim can be allowed because of this feature since, as recited in the claim, it is used in the same manner as shown by the references. We also feel, as did the Board of Appeals, that in this particular case the groove of Crawford is the mechanical equivalent of the holes of applicants, especially when these respective items of structure are viewed in the light of the similar manner in which they are used.

■ The second of the italicized portions of the claim states that the pin has two elongated sections, each of uniform cross section. The Terry patent does not show this exact structure, nor does the Crawford patent. Thus there is a difference between what appellant is claiming and what the prior art shows. However, we feel that the difference is not a patentable difference since it is a mere change in form over what Crawford discloses without any corresponding change in function. Gleason v. Dosch, 39 F.2d 687, 17 C.C.P.A., Patents, 1012. Thus we must agree with the board's statement "The details of the pin * *, in our opinion, is an unpatentable limitation involving mere mechanical skill, and producing no new or unobvious result."

■■ The third italicized portion of the claim recites that the resilient pin has one portion bearing against the tooth and the other against the cap. Appellants contend that this feature causes the claims to be allowable over Crawford whose resilient pin has one side which bears against the cap while the second side bears against both the tooth and the cap. It seems to us, that since the Crawford pin, as shown on the drawing, appears to have its second side bearing against both the cap and tooth that this side must inherently bear against the tooth. Thus the Crawford structure

meets this limitation of the claim. We consider the claim not to define over the reference, and therefore consider it to be unpatentable, it being well settled that the right to patent claims depends on whether the claims adequately recite features upon which an applicant predicates patentability, assuming that these features are patentable. In re Richards, 187 F.2d 643, 38 C.C.P.A., Patents, 900; In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982. Furthermore, we cannot see how the recitation in the claim defines over the Crawford patent which on page 2, column 1, lines 29 et seq. states:

> "The forward face or edge of the key 15 thus bears against the front wall 7 of the groove, which wall is of considerable width, while the rear face of the key bears against the forwardly facing shoulder of the lip 13 which shoulder is also of considerable width—in fact equal to the width of the body or base 1; and the surfaces of the front wall and lip shoulder, which are thus engaged by the front and rear faces, respectively, of the key, are directly opposed."

The fact that the tribunals of the Patent Office failed to consider this part of the Crawford patent does not affect its validity as a reference in that respect before this court. In re Hall, 208 F.2d 370, 41 C.C.P.A., Patents, 759. This is especially so in this case since it appears from the record that applicants never presented the foregoing argument to the examiner or to the board.

■ Appellants contend that the claims of Groups I, II, and III are patentable over Crawford since the cap of Crawford is driven as far back as it will go whereas appellants' cap can move back on its tooth as there is wear between these parts. However, as far as we can see, the claims do not recite any structure which is capable of performing such a function. We must therefore sustain the board's holding in this respect since it is well settled that if the claims fail to adequately define inventive features by proper limitations, they are not allowable

even though the device would support patentable claims. In re Bisley, supra; In re Pinkerton, 115 F.2d 823, 28 C.C. P.A., Patents, 803.

We will now review the rejection of the claims of Group IV. As stated above, the claims of this group relate to a retainer pin subcombination, and were rejected on the Terry patent. There can be no doubt that the claims contain limitations which differentiate them from the reference, this, it appears, being appellants' sole argument for patentability. These limitations which appear in various of the claims are that the rubber is narrower than the metal sections; the metal sections are semi-circular in shape; the longitudinal edges of the rubber are spaced inwardly from the exterior of the pin; and that a plurality of rubber bodies are positioned between the outer sections of the pin. We have carefully reviewed these differences over the Terry reference, but we cannot see, and appellants have not shown us, where these differences amount to invention. We must therefore sustain the rejection of these claims, it being well established that if the claims call for limitations which are not shown in the reference, and these limitations are not inventive, the recitation of this matter does not make the claim patentable over the prior art. In re Bisley, supra, and cases cited therein.

For the foregoing reasons, the decision appealed from must be affirmed.

Affirmed.

WORLEY, Judge, concurs in the conclusion.