**Christos HOIDAS, Plaintiff,**

v.

**ORION & GLOBAL CHARTERING CO., INC. and Oil Transport Corp., Defendants.**

**No. 75 Civ. 3087.**

United States District Court, S. D. New York.

Nov. 23, 1977.

Lebovici & Safir, New York City, for plaintiff; Herbert Lebovici, New York City, of counsel.

Healy & Baillie, New York City, for defendants; Thomas L. Rohrer, New York City, of counsel.

LASKER, District Judge.

Hoidas, a Greek citizen, was injured while a crew member aboard the S.S. Kissavos.

The accident occurred in Bombay while the Kissavos was trading between that Indian port and the Persian Gulf, as was true throughout Hoidas' service aboard the vessel.[1] The Kissavos is owned by Oil Transport Co., a Liberian corporation whose two shareholders are Basil and Nicholas Goulandris.

Hoidas sues Oil Transport and Orion & Global Chartering Co., the local agent of one of the ship's managing companies. Jurisdiction is predicated on the applicability of the Jones Act, 46 U.S.C. § 688 and the General Maritime Law. In earlier proceedings before Judge Inzer B. Wyatt, both defendants moved to dismiss on the grounds that there were insufficient contacts to support application of United States law and, consequently, confer subject matter jurisdiction. The motion was denied without prejudice to renew because of the unresolved question whether there were sufficient contacts to create jurisdiction under the rule of *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). The motion is now renewed following discovery. Because no substantial American contacts have been established, the motion is granted.

Although application of the test formulated in *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), may not itself be determinative whether United States law may be applied, see, *Hellenic Lines v. Rhoditis, supra*, 398 U.S. at 309, 90 S.Ct. 1731, the *Lauritzen* analysis marks the beginning of the inquiry. In this case: (1) the accident occurred in Bombay, (2) the ship is of Liberian registry, (3) Hoidas is a Greek national and domiciliary (Hoidas Deposition at 3A, 11), (4) Oil Transport is a Panamanian corporation (¶ 2, Complaint), (5) Hoidas' contract to work aboard the Kissavos was signed in Greece (Hoidas Deposition at 13) and he went aboard in the Persian Gulf (*Id.* at 19), (6) neither party disputes the availability of a foreign forum, and (7) the law of the forum (this court) is American.

*Lauritzen* has been supplemented by *Rhoditis*, which requires an examination of whether the shipowner has a "base of operations" in this country. *Hellenic Lines v. Rhoditis, supra*, 398 U.S. at 309, 90 S.Ct. 1731.

In attempting to build such a base, Hoidas makes much of the fact that the charter contract (between the foreign charterer and Oil Transport) under which the Kissavos was operating at the time of the accident, was executed in this country. (See, Exhibit E, Lebovici Affidavit) Hire payments were made here as well, collected by Andros Compania Maritima S.A. (a Panamanian corporation that is one of Oil Transports' agents, see Goulandris Deposition at 42, 71–73), and deposited with a New York agent of Andros' bank, the Bank of Nova Scotia. (See Exhibit G, Lebovici Affidavit)

To sustain jurisdiction merely because New York was the place of contracting, or because the Bank of Nova Scotia maintains a depositary branch here (though Andros has no account here, see Goshine Deposition at 4, 5) would be as artificial as refusing jurisdiction merely because Hoidas signed *his* contract abroad. In any event, these contacts are neither "substantial nor continuing." *Cf., Hellenic Lines v. Rhoditis, supra*, 398 U.S. at 311, 90 S.Ct. 1731.

Hoidas also alleges that the admittedly domestic Orion Corp. managed the Kissavos during the period in question and accordingly provides the necessary "contact" between that vessel and this country in accordance with the rule of *Antypas v. Cia. Maritima San Basilio, S.A.*, 541 F.2d 307, 309, 310 (2d Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 116, 51 L.2d.2d 545 (1977); *Moncada v. Lemuria Shipping Corp.*, 491

---

1. The Kissavos was a stranger to American ports both before and after the period during which Hoidas worked aboard her. (Exhibit W, Lebovici Affidavit) *cf., Hellenic Lines v. Rhoditis, supra*, 398 U.S. at 308, 310, 90 S.Ct. at 1733 (the ship was more than a "casual visitor" to United States ports: "the District Court found that its entire income is from cargo either originating or terminating in the United States."); *Mattes v. Hellenic American Line*, 427 F.Supp. 619, 624 (S.D.N.Y.1977) ("During the time in question the [ship] was a passenger vessel, most of whose voyages either originated or terminated in the United States.")

F.2d 470, 473 (2d Cir. 1974), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974). That contention flounders. When deposed, Basil Goulandris testified that management and operation of the vessel were shared by two foreign corporations, the United Shipping and Trading Company of Greece and Andros (Panamanian) (Goulandris Deposition at 71). United attends to the every-day details of the ship's performance; it provides the crew and port personnel, and is responsible for inspection and crew claims (*Id.*, at 71, 72). Andros is the ship's financial manager, as is apparent from Hoidas' own exhibits (Exhibits E, G, Lebovici Affidavit); it negotiates charter agreements and collects hire payments. Hoidas does not dispute that the roles of Andros and United are as Goulandris testified, but he attempts to cast Orion as an additional manager/operator. Aside from the fact that Goulandris and Lloyd Nelson (Orion's President) reject that characterization (Goulandris Deposition at 72; ¶ 7, Nelson Affidavit), Hoidas' exhibits undermine it by establishing that Orion was merely an interlocuteur, through which the charterer relayed messages, complaints and requests for assistance either to the ship's owner or one of its managers. When action was required it was understood by all concerned that Orion would relay the tidings, but that others—Oil Transport and, presumably, Andros or United—would do the job (see Exhibits G–U, Lebovici Affidavit, especially L, N, P and R). In short, the messenger service provided by Orion does not constitute "management" or "operation" sufficient to establish an American "base of operation: "[2] agents have performed more extensive duties than Orion did in this case without subjecting their principal shipowner to the jurisdiction of the United States. See, *Frangiskatos v. Liberian M/V Konkar Pioneer*, 353 F.Supp. 402, 403 (S.D.N.Y. 1972), *aff'd*, 471 F.2d 714 (1972).[3]

Finally, Hoidas attempts to establish the requisite "contact" through the alleged domicile of the shipowner corporation's shareholders, Basil and Nicholas Goulandris. *Bartholemew v. Universe Tankships, Inc.*, 263 F.2d 437, 442 (2d Cir. 1959), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); *Mattes v. National Hellenic American Line*, 425 F.Supp. 619, 623 (S.D.N.Y. 1977). From the deposition of Basil Goulandris, it is clear that he is a Swiss citizen, and a domiciliary of either that country or Greece (Goulandris Deposition at 3). As for the nationality and domicile of Nicholas Goulandris, nowhere in the voluminous papers submitted by Hoidas' attorney is it claimed, nor is it apparent, that he is American. On the contrary, it appears that Nicholas Goulandris is Greek (see, Goulandris Deposition at 69; *Id.*, Exhibit 10(c)).

Accordingly, the motion is granted, unless within twenty days, Hoidas submits competent evidence (passport, deposition, affidavit) that Nicholas Goulandris is an American.

It is so ordered.

---

**2.** In *Antypas*, the agent's activities that were found to be sufficient to confer jurisdiction were considerably broader than those involved here: the *Antypas* agency agreement provided for a "a general agency, and empower[ed] [the agent] to redelegate to its subagent in the United States full and complete responsibility for the booking and solicitation of cargo and passengers, and collection of freight and passenger revenues . . . Pursuant to this agreement, [the agent] was given the power to fix rates, allocate tonnage and space sailings." 541 F.2d at 309. The agent also performed extensive advertising services. In another case where the shipowner's agent (or affiliate) conferred jurisdiction, *Mattes*, the activities involved included collection of passenger revenues, maintenance of a bank account in New York with a United States bank, payment of some of the ship's expenses from the bank account, advertising and booking of passenger reservations. 427 F.Supp. at 624.

**3.** In that case, the agent "forwarded operating instructions to the [ship], handled accounts, assisted the owner in negotiating time charter agreements and forwarded all illness and accident reports . . . ."