Jason HAZELL, Plaintiff,

v.

BOOTH STEAMSHIP CO., LTD., Barber Steamship Lines, Inc., as Agent for both Booth Steamship Co., Ltd., and the M/V CLEMENT, Defendants.

No. 76 Civ. 1292.

United States District Court,
S. D. New York.

May 31, 1977.

Fields & Rosen, New York City, for plaintiff; Michael S. Seltzer, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendants; Henry J. O'Brien, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This action is brought under the Jones Act, 46 U.S.C. § 688, and General Maritime Law to recover damages for injuries allegedly sustained by plaintiff seaman who was serving on board the British flag vessel M/V CLEMENT on October 6, 1975, while the vessel was moored in New York. Defendants have moved to dismiss the action for lack of subject matter jurisdiction, or alternatively, on the grounds of *forum non conveniens.*

Plaintiff is a citizen and resident of Barbados, who was serving under British Articles of Employment. The vessel is owned and operated by defendant Booth Steamship Company, Ltd. ("Booth"), a British corporation with its principal place of business in Liverpool, England. Defendant Barber Steamship Lines, Inc. ("Barber") is a New York corporation which acts as agent for Booth in the United States. The President of Barber has attested that Barber never has owned, managed or controlled any vessels, including the M/V CLEMENT, nor hired any of the vessel's personnel.

The trip out of which the alleged injury occurred commenced on May 8, 1975 out of Barbados, where plaintiff signed on the vessel. The articles under which plaintiff was serving terminated on October 7, 1975, the day following the accident, which took place as the vessel was docking at a pier in Brooklyn. After docking, plaintiff was taken to Long Island College Hospital where he remained as an inpatient until October 8, 1975, at which time he signed new articles without breaking service with the vessel and returned to Barbados, where he signed off and terminated his employment on October 25, 1975. He was treated at a clinic and hospital in Barbados, and subsequently marked fit for sea service on May 18, 1976.

Initially, defendants seek dismissal of the complaint as against the M/V CLEMENT as a non-suable entity, and Barber as an improper party. Plaintiff has not

opposed these contentions.* Since nothing in the record indicates that plaintiff is proceeding *in rem* or *quasi-in-rem*, and since the vessel is not incorporated, the complaint is dismissed as to the M/V CLEMENT. As for Barber, Barber is an agent for a disclosed principal and the President of Barber has attested that it did not act as plaintiff's employer, and had no responsibility for controlling or operating the vessel. Consequently, any claim against this company is improper under either the Jones Act or diversity jurisdiction. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); *Dassigienis v. Cosmos Carriers and Trading Corp.*, 442 F.2d 1016, 1017 (2d Cir. 1971). The complaint as against Barber is likewise dismissed.

■ As against Booth, then, a determination of subject matter jurisdiction under the Jones Act turns on the qualitative substantiality of the contacts existing between the transaction involved in this case and the United States. *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470 (2d Cir.), *cert. denied sub nom. Ekberg Shipping Corp. v. Moncada*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974). *See Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Although the list is not exhaustive, among the contacts to be considered are the place of the wrongful act, law of the flag, allegiance and domicile of the injured seaman, allegiance of the owner, place of the contract of employment, inaccessibility of a foreign forum, the law of the forum, and the shipowner's base of operations. *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), *Lauritzen v. Larsen, supra*.

■ A glance at these factors tips the balance heavily in favor of defendants—the vessel is British, the plaintiff is a domiciliary of Barbados, the shipowner is British, the contract was entered into initially in Barbados, and the defendant Booth has represented that it is amenable to suit in Bar-

bados, and that if this action is dismissed and a new action commenced in Barbados, it will consent not to invoke the defenses of statute of limitation or laches. Additionally, Booth has represented, by affidavit of its secretary, that none of its officers or directors are American citizens or residents, and no American citizen or resident has any beneficial interest in the company. However, balancing or weighing the presence of certain contacts against the absence of others is not the proper course of inquiry. Instead, the determination turns on whether the contacts existing with the United States are on an absolute scale, substantial, so that application of American law to the claims asserted would be proper. *Moncada v. Lemuria Shipping Corp., supra*, at 472; *Bartholomew v. Universe Tankships*, 263 F.2d 437, 441 (2d Cir.), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959).

The contacts present in this case include the accident which occurred here and the signing of new articles of employment here. Plaintiff was hospitalized here and treated by American doctors. Additionally, the vessel stopped in American ports on approximately 14 occasions during the journey purportedly resulting in plaintiff's injuries, and in New York on approximately 10 occasions subsequent thereto. Plaintiff also asserts that Booth uses New York ports extensively and gains income from goods carried into and out of New York.

Both the place of the wrongful act and the place of contracting have been viewed as largely fortuitous and of little weight in the substantiality calculus for maritime torts. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 383–84, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). Thus, of the contacts favoring the plaintiff, the most important focus on Booth's base of operations. Plaintiff relies on *Hellenic Lines v. Rhoditis, supra*, to support jurisdiction. In that case, the vessel owner, although a Greek corporation, had its largest office in New York and another in New Orleans, and more than 95 percent of its stock was

---

* Indeed, plaintiff has indicated his willingness to discontinue the action as against Barber if it does not indeed operate or control the vessel.

owned by a Greek citizen who was an American domiciliary. The vessel was engaged in regularly scheduled runs between American ports and ports of the Middle East, Pakistan and India, and its entire income was from cargo either originating or terminating in the United States. Under those circumstances, the Supreme Court pierced the foreign facade of the operation and held that the exercise of Jones Act jurisdiction was proper. Likewise, in *Moncada v. Lemuria Shipping Corp.*, of primary weight were the factors indicating that all defendant's stock was American owned, all of its officers were American, the managing and the chartering of the vessel were conducted here, the base of operations was here, and 40 percent of the vessel's voyages began or ended in American ports. *See also Antypas v. Cia. Maritime San Basilio, S.A.*, 541 F.2d 307 (2d Cir. 1976).

■ By contrast, Booth is not American owned or based; nor are any of its officers or directors American. Barber, its American agent, does not operate or manage the vessel. It merely forwards operating instructions originating in Great Britain to those of Booth's vessels in American waters and handles accounts and schedules freight for those vessels at a New York port. These functions are ministerial in nature; no discretion is exercised and all funds collected are simply passed on to Booth. Additionally, stops at American ports only encompassed approximately 27 percent of the total stops made during the voyage in question, and plaintiff has proffered no showing as to the proportionate income adduced by the vessel from American trade. Indeed, defendants claim that American ports were not a major source of the vessel's income. On the basis of the record as developed before me, I cannot say that applying American law to plaintiff's claim would be a useful endeavor, see *Dassigienes v. Cosmos Carriers and Trading Corp., supra*, at 1017. The contacts present are simply insufficient to permit this Court to assume jurisdiction under the Jones Act. Since diversity of citizenship is absent, subject matter jurisdiction does not exist.

Plaintiff has requested leave to take defendant's deposition in the event a decision in defendant's favor is forthcoming. It is undisputed that defendant has filed answers to a lengthy set of interrogatories propounded by plaintiff and has satisfied plaintiff's request to produce certain documents. Several of the interrogatories called for information regarding ownership and operation of the defendants, yet on the basis of the responses thereto plaintiff has been apparently unable to come forth with facts which will support jurisdiction. In the interests of justice, however, and to prevent disposition on a possibly incomplete development of the facts, plaintiff will be given 60 days from the filing of this order to complete the depositions and apprise this Court of the results thereof. If that information indicates that the assumption of jurisdiction is proper, this order shall be vacated and defendant's motion to dismiss on the grounds of *forum non conveniens* will be considered.

Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is granted unless, within 60 days from filing of this opinion, plaintiff comes forward with additional facts to support jurisdiction based on information obtained as a result of Booth's deposition.

IT IS SO ORDERED.