**Jason HAZELL, Plaintiff,**

v.

**BOOTH STEAMSHIP CO., LTD., Barber Steamship Lines, Inc., as Agent for both Booth Steamship Co., Ltd., and the M/V CLEMENT, Defendants.**

**No. 76 Civ. 1292.**

United States District Court,
S. D. New York.

Dec. 28, 1977.

Fields & Rosen, New York City, for plaintiff by Michael S. Seltzer, Forest Hills, of counsel.

Kirlin, Campbell & Keating, New York City, for defendants by Henry J. O'Brien, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an action brought under the Jones Act, 46 U.S.C. § 688, and General Maritime Law, to recover damages for injuries allegedly sustained by plaintiff, a citizen and resident of Barbados, while serving aboard the British flag vessel M/V CLEMENT while the vessel was moored in New York. By opinion and order dated May 31, 1977, I dismissed the action as against the M/V CLEMENT and Barber Steamship Lines, Inc. ("Barber"), a New York corporation which acts as the American agent for defendant owner, Booth Steamship Co., Ltd. ("Booth"), a British corporation with its principal place of business in England. Additionally, after a thorough analysis of the record before me at that time, I determined that the existing contacts with the United States were insufficient to permit this Court to assume jurisdiction under the Jones Act, but I permitted plaintiff to take Booth's deposition and come forward with jurisdictional facts on the basis of that deposition. I stated that if such a showing indicated that subject matter jurisdiction could be properly exercised, my order of May 31, 1977 would be vacated and Booth's remaining objection to this action on the grounds of *forum non conveniens* would be considered.

With regard to subject matter jurisdiction, my previous opinion noted that the existing American contacts in this case include the accident which occurred here and the signing of new articles of employment here. Plaintiff was hospitalized here and treated by American doctors. Additionally, the vessel stopped in American ports on approximately 14 occasions during the journey purportedly resulting in plaintiff's injuries, and in New York on approximately 10 occasions subsequent thereto. Plaintiff also asserts that Booth uses New York ports extensively and gains income from goods carried into and out of New York.

Since the place of the wrongful act and the place of contracting have been held to be insubstantial contacts, *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 383–84, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the inquiry was directed to Booth's base of operations. The record indicated that Booth was neither American owned nor based, that Barber functioned in a merely ministerial capacity, exercising no discretion, and that American port stops encompassed only 27 percent of the total stops made during the voyage in issue. Additionally, Booth claimed that income from American trade was not a major portion of the vessel's revenues and plaintiff proffered no indication of the proportionate income so adduced. Analyzing this record in light of *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Antypas v. Cia. Maritima San Basilio, S.A.*, 541 F.2d 307 (2d Cir. 1976); and *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470 (2d Cir.), cert. denied sub nom. *Ekberg Shipping Corp. v. Moncada*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974), I determined that the American contacts were not sufficiently substantial to warrant application of the Jones Act.

Plaintiff has now come forward with additional facts which, in his view, constitute substantial contacts under *Antypas* and *Moncada*. Basically, these facts, which will

be taken as true for the purpose of this motion, focus on Barber's role in collecting freight charges in New York and disbursing funds for expenses from here, on Booth's listing in the Manhattan Telephone Directory at Barber's telephone number, and on Barber's listing in the Journal of Commerce as Booth's general agent. Plaintiff claims that these facts indicate an identity of interest between Booth and Barber. Plaintiff also proffers three of the vessel's voyage accounts to indicate that "substantial monies were derived from United States trade." (Seltzer Affidavit, p. 4). However, I have previously found that an analysis of the vessel's itinerary indicated that over 70 percent of the vessel's total stops were in foreign ports, and thus the "substantiality" of the revenues from American trade could not be determined. That plaintiff has proffered the amount of freight collected during stops in New York on three occasions is simply an insufficient basis on which to conclude that trading with American ports produced "substantial" income.

Moreover, the identity of interest to which plaintiff refers does not constitute the type of American presence found by either the *Antypas* or *Moncada* courts to warrant application of the Jones Act. In both of those cases, more than simply American collection and disbursements and designation of American agents were involved. Among other things, present in both cases was American ownership of the foreign shipowner and the fact that the American agents were delegated the managing and chartering functions. The deposition testimony of Barber's Vice-President indicates that such is not the case here. Rather, the vessel's itinerary and crew were set by Booth in England, and all revenue collections, after the deduction of expenses, were credited to Booth's account. Additionally, Barber functioned as agent for numerous shipowners unrelated to Booth and there is no overlapping corporate connections between Booth and Barber by virtue of any common ownership or management.

Nor does *Mattes v. National Hellenic American Line, S.A.*, 427 F.Supp. 619 (S.D. N.Y.1977), which upheld Jones Act jurisdiction in the absence of American ownership of the foreign shipowner, support plaintiff's position. In that case, *inter alia*, most of the vessel's voyages originated or terminated in American ports, 85 percent of the vessel's passengers were American so as to generate substantial income therefrom, American corporations played significant roles in the vessel's management, operation and marketing, and the vessel's business centered here, competing directly with American vessels. Even in the presence of these contacts, the *Mattes* court recognized that "the issue is close." *Id.* at 627. Plaintiff has offered no facts even arguably approaching the contact calculus of that case.

Accordingly, I adhere to my original determination that no cause of action "well-founded in law and in fact," *Lauritzen v. Larsen*, 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953), has been asserted under the Jones Act. Since no other jurisdictional ground apparently exists, the complaint is dismissed.

SO ORDERED.