**Bjord Turid FOSEN, Personal Representative of the Estate of Jan Fosen, Deceased; Anne Marie Drangeld, Personal Representative of the Estate of Olan Drangeld, Deceased; Kathleen Marie Torsøe, Personal Representative of the Estate of Hans Aksel Torsøe, Deceased; Maren Dahl, Personal Representative of the Estate of Stale Dahl, Deceased; and Ingunn Koppergard, Personal Representative of the Estate of Age Koppergard, Deceased, Plaintiffs,**

v.

**UNITED TECHNOLOGIES CORPORATION, d/b/a United Technologies Corporation of New York City; United Aircraft International, Inc., d/b/a United Aircraft Corporation; All Nippon Airways Co., Ltd., d/b/a All Nippon Airways, Inc., Americas; and All Nippon Airways, Inc., Americas, Defendants.**

No. 79 Civ. 92 (CHT).

United States District Court,
S. D. New York.

Feb. 7, 1980.

David Jaroslawicz, New York City, for plaintiffs.

Bigham, Englar, Jones & Houston, New York City, for defendants United Technologies Corp. and United Technologies Intern., Inc.; John J. Martin, Edward M. O'Brien, New York City, of counsel.

Condon & Forsyth, New York City, for defendant All Nippon Airways Co., Ltd.; George N. Tompkins, Jr., Desmond T. Barry, Jr., Katherine B. Posner, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant All Nippon Airways, Inc., Americas; Peter E. Fleming, Jr., Eliot Lauer, Mark D. Speed, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This wrongful death action arises out of a helicopter crash that occurred on November 23, 1977 in the North Sea off the coast of Norway. The plaintiffs, five Norwegian citizens, instituted this suit as personal representatives of five Norwegian citizens who were killed in the accident. The decedents were employed by the Phillips Petroleum Company and worked on a mobile drilling rig in the North Sea. The accident occurred when the helicopter that was transporting them to the rig crashed about thirty miles from the coastline. Nobody aboard the helicopter survived, and none of the evidence presented so far sheds any light on how or why the accident occurred.

At the time of the accident the helicopter was owned and operated by Helikopter Service A/S ("Helikopter Service"), a Norwegian corporation that is not a party to this action. The helicopter was manufactured in 1970 by the Sikorsky Aircraft Division of defendant United Technologies Corporation ("United Technologies"). United Technologies is a Delaware corporation that maintains its principal place of business and helicopter manufacturing facilities in Connecticut. Defendant United Technologies International, Inc. ("United International"),* a Delaware corporation located in Connecticut, is United Technologies' wholly owned subsidiary and provides market support for the sale of its products in the international market. Defendant All Nippon Airways Co., Ltd. ("ANA") is a Japanese corporation that acquired the helicopter from United Technologies in 1971 and sold it to Helikopter Service in 1976. ANA owns approximately 40% of the stock of All Nippon Airways Trading Co., Ltd. ("ANA, Ltd."), another Japanese corporation that owns 100% of the stock of defendant All Nippon Airways, Inc., Americas ("ANA Americas"). ANA Americas is a California corporation that is licensed to do business in California, Washington, and New York.

The plaintiffs allege that the crash that killed the decedents was caused by a defect in the design, manufacture, or maintenance of the helicopter. Their complaint proposes three theories of liability: negligence, strict products liability, and breach of express and

---

* Incorrectly sued herein as "United Aircraft International, Inc."

implied warranties. Jurisdiction is allegedly based on diversity of citizenship, 28 U.S.C. § 1332, and the Death on the High Seas Act, 46 U.S.C. § 761.[1]

Defendant ANA has moved to dismiss the complaint for lack of personal jurisdiction. ANA Americas has made a motion for summary judgment, or in the alternative, to dismiss the action for failure to state a claim upon which relief can be granted. Defendants United Technologies and United International have moved to dismiss the case on grounds of forum non conveniens. Each defendant's motion will be discussed in turn. For the reasons described below, the complaint is dismissed with respect to all of the defendants.

## ANA

ANA is a Japanese corporation with its principal place of business in Japan. It is an air carrier engaged in the transportation of passengers and cargo between points outside of the United States. The company has no scheduled or unscheduled flights anywhere in the United States and is not authorized by the Civil Aeronautics Board to conduct such flights here. Affidavit of Mineo Takizawa, sworn to March 7, 1979, ¶ 4 ("Takizawa Aff."). ANA does not maintain any sales, ticket or reservation office in New York or any other state. *Id.* ¶ 5. The company has neither an authorized agent for service of process nor a Certificate of Authorization to do business in New York or any other state. *Id.* ¶ 6.

The company does, however, employ a financial representative, Mineo Takizawa, in New York. His primary functions are to gather financial information for the use of ANA management in Tokyo and to negotiate loans with banks located in the city. Mr. Takizawa has office space in the New York office of ANA Americas. According to Mr. Takizawa, "ANA and ANA-Americas

are separate and independent entities" and "[t]he day-to-day operations of ANA–Americas are performed independently by the staff of ANA–Americas who are not employed by ANA." *Id.* ¶ 12. He has stated that he is the only person in the office of ANA Americas who is employed by ANA. Deposition of Mineo Takizawa, taken March 12, 1979, at 14 ("Takizawa Dep."). However, ANA pays 50% of the monthly rent for the office as well as half of the telephone bill. *Id.* at 36. One of the secretaries in the office is used jointly by both companies, and ANA is responsible for half of this person's salary. *Id.* at 15. ANA maintains a bank account, with an average monthly balance of $10,000.00, in the New York branch of the Bank of Tokyo. Takizawa Aff. ¶ 15. The money in this account is used to meet Mr. Takizawa's monthly expenses and to pay for secretarial services. *Id.*

The plaintiffs contend that ANA is "doing business" in New York, and is therefore subject to jurisdiction here pursuant to N.Y.C.P.L.R. § 301 (McKinney 1972), by virtue of the activities conducted by Mr. Takizawa.[2] ANA argues that neither Mr. Takizawa's business transactions nor the presence of ANA Americas in New York is sufficient to render ANA amenable to jurisdiction in this state. The defendant also argues that it was not properly served in this action because the plaintiffs served Prentice-Hall Corporation Systems, Inc., the agent designated for service by ANA Americas, and not ANA. The plaintiffs, in turn, point out that ANA "was properly notified of this lawsuit through service on ANA Americas and in any event additional service is presently being effected on ANA." Statement of Points and Authority in Opposition to Defendant ANA's Motion to Dismiss for Lack of Personal Jurisdiction

---

1. The statute, entitled Death on High Seas by Wrongful Act, is quoted *infra*.

2. § 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." It is well established under New York case law

that a foreign corporation is subject to jurisdiction in New York if it is "doing business" there. *See Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915, 917 (1917).

and Improper Service ("Plaintiffs' Memorandum I") at 13.[3]

■ Obviously assuming that diversity jurisdiction is present in this case, the parties have discussed only the New York "doing business" standard in the memoranda submitted to the Court on this motion to dismiss for lack of personal jurisdiction. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963) (en banc) (federal court in diversity action applies jurisdictional law of the state in which it sits). Unfortunately, these discussions miss the mark. As is evident from a brief recital of the facts, this action is between two foreign litigants and so diversity jurisdiction cannot be sustained. *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975); *Bergen Shipping Co., Ltd. v. Japan Marine Services, Ltd.*, 386 F.Supp. 430, 432 (S.D.N.Y.1974). Diversity jurisdiction, as defined in 28 U.S.C. § 1332, exists only in actions between: (1) citizens of different states; (2) citizens of a state and citizens of a foreign state; (3) citizens of different states and in which citizens of a foreign state are additional parties; and (4) a foreign state and citizens of a state or different states. A corporation is deemed to be a citizen of any state in which it is incorporated and of the state where it has its principal place of business. *Id.* § 1332(c). The plaintiffs are Norwegian, the defendant ANA is Japanese; the fact that other defendants in this suit are citizens of a state does not cure this jurisdictional defect. *See Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975); *Ex parte Edelstein*, 30 F.2d 636, 638 (2d Cir.), *cert. denied*, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929); *Neeld v. American Hockey League*, 439 F.Supp. 459, 462 (S.D.N.Y.1977); *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334

F.Supp. 1069, 1071 (S.D.N.Y.1971); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3604 (1975). Therefore, contrary to what the parties evidently presumed, this Court does not have diversity jurisdiction to entertain the plaintiffs' claims against ANA.[4]

This lack of diversity jurisdiction does not, however, dispose of this portion of the lawsuit. The plaintiffs also alleged jurisdiction on the basis of the Death on the High Seas Act. This Act provides, in part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C. § 761.

■ It is unclear whether the plaintiffs' claims against ANA are cognizable under this statute. First, the wrong alleged must "bear a [sufficient] relationship to traditional maritime activity" to satisfy the standard enunciated by the Supreme Court in the 1972 case of *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). As stated by the Court, "the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a 'maritime tort.'" *Id.*

---

**3.** Because the plaintiffs' claims against ANA are dismissed on other grounds, the Court need not decide whether the defendant was properly notified by the plaintiffs' initial attempt to serve process.

**4.** Although § 1332(c) might appear to establish diversity jurisdiction over cases in which an alien sues another alien and a United States citizen, it has not been so interpreted by the

courts or commentators. *See, e. g., IIT v. Vencap, Ltd., supra*, 519 F.2d at 1015; *Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters Corp., supra*, 506 F.2d at 758; *Neeld v. American Hockey League, supra*, 439 F.Supp. at 462; Wright, Miller & Cooper, *supra*; 1 Moore's Federal Practice ¶ 0.75[1.—2], at 709.7 (2d ed. 1979).

Although post-*Executive Jet* cases have not yielded totally consistent results, *see Hubschman v. Antilles Airboats, Inc.*, 440 F.Supp. 828, 836, 838 (D.V.I.1977), the accident that gave rise to this suit is probably related closely enough to extensive offshore operations to fall within the Court's admiralty jurisdiction. *See Higginbotham v. Mobile Oil Corp.*, 545 F.2d 422, 424 n.1 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Roberts v. United States*, 498 F.2d 520, 524 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Hubschman v. Antilles Airboats, Inc., supra*, 440 F.Supp. at 840.

 Second, assuming the existence of admiralty jurisdiction, it must be determined whether the plaintiffs' claims against ANA actually allege a "wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 761. The Death on the High Seas Act does provide for claims based on negligence, *Krause v. Sud-Aviation, Societe Nationale de Constructions Aeronautiques*, 413 F.2d 428, 429, 431–32 (2d Cir. 1969), breach of implied warranty of fitness, *id.*, and products liability, *In re Marine Sulphur Transport Corp.*, 312 F.Supp. 1081, 1102 (S.D.N.Y.1970), *rev'd in part on other grounds*, 460 F.2d 89 (2d Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Soileau v. Nicklos Drilling Co.*, 302 F.Supp. 119, 124 (D.C.La.1969). Although ANA did not manufacture the helicopter, the company's allegedly negligent maintenance and operation could have created a defect in the machine. If American law were applied, ANA could be liable for merely selling a defective product, *see* Restatement (Second) of Torts § 402A (1965); the result under Norwegian law, as well as the question of which nation's law applies, is uncertain. The Court need not reach these questions, however, in light of its conclusion, explained below, that the plaintiffs cannot invoke the Death on the High Seas Act because there are insufficient points of contact between the United States and the transaction giving rise to their claims against ANA. *See Lauritzen v. Larsen*, 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953).

In *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 454 (2d Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976), the Second Circuit stated that:

The broad principles of choice of law established for Jones Act cases in *Lauritzen v. Larsen*, [supra,] were declared equally applicable to cases arising under the general maritime law in *Romero v. International Operating Co.*, 358 U.S. 354, 381–4, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), and have been applied to suits brought under the Death on the High Seas Act. *Symonette Shipyards Ltd. v. Clark*, 365 F.2d 464 (5 Cir. 1966).

The governing principle winnowed from these cases is that the plaintiffs can recover under the Death on the High Seas Act only if they are able to establish some significant national contacts warranting the application of the statute to non-resident aliens. *Lauritzen v. Larsen, supra*, 345 U.S. at 582–592, 73 S.Ct. 921.

In *Lauritzen*, the Supreme Court delineated the following factors that influence the choice of law to govern a maritime tort claim: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. *Id.* 345 U.S. at 583–92, 73 S.Ct. at 928–33. The *Lauritzen* test is not a mechanical one, and the list of seven factors is not exhaustive. *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970). The *Rhoditis* Court emphasized that the shipowner's "base of operations" is an important factor in determining whether the Jones Act applies, *id.* at 309, 90 S.Ct. at 1734, and the Second Circuit has suggested that American ownership of the vessel might be sufficient to establish jurisdiction under the statute. *See, e. g., Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470, 473 (2d Cir.), *cert. denied sub nom. Ekberg Shipping Corp. v. Moncada*, 417 U.S.

947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 443 n.4 (2d Cir.), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). "[C]ontacts to which the courts have paid little attention include the place of injury, . . . the place where the contract was made, . . . and the inaccessibility of a foreign forum." *Moncada v. Lemuria Shipping Corp., supra*, 491 F.2d at 472–73. As stated by the Second Circuit, "Jones Act jurisdiction exists only where there are substantial contacts between the transaction involved in the case and the United States, with substantiality to be determined on an absolute scale and not by comparing or balancing the presence of certain contacts with the absence of others." *Id.* at 472; *see Antypas v. Cia. Maritima San Basilio, S. A.*, 541 F.2d 307, 310 (2d Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392, 1396 (2d Cir. 1976).

This case does not fall neatly within the framework or guidelines established by the Jones Act decisions, for this is a helicopter crash case, not a typical maritime accident. Yet the Court has attempted to determine whether the requisite "significant national contacts" have been established in accordance with the Second Circuit's pronouncement that Jones Act choice of law principles apply to suits brought under the Death on the High Seas Act. *Fitzgerald v. Texaco, Inc., supra*, 521 F.2d at 454; *see also De Mateos v. Texaco, Inc.*, 562 F.2d 895, 900 (3d Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). On the basis of this determination, the Court concludes that the plaintiffs cannot invoke the Act to pursue their claims against this foreign defendant.

The fact that the helicopter was designed and manufactured in the United States is not a significant contact with respect to ANA because this defendant is not charged with negligent design or manufacture. Although the sale and delivery of the helicopter to ANA occurred in Connecticut, Deposition of Robert H. Arnold, taken January 23, 1979, at 23 ("Arnold Deposition"), no facts have been presented or alleged indicating that ANA maintained or operated the helicopter in the United States for an extended period of time or directly prior to the sale to Helikopter Service. Indeed, the fact that ANA has no sales offices in the United States and conducts no flights here suggests quite the reverse. All of the plaintiffs' evidence is directed toward establishing that ANA is "doing business" in New York. Yet neither Mr. Takizawa's financial transactions, nor the presence of ANA Americas, an affiliated company, is a "significant contact"; the United States is not ANA's "base of operations." *See Hazell v. Booth Steamship Co., Ltd.*, 444 F.Supp. 85, 87 (S.D.N.Y.1977); *Hoidas v. Orion & Global Chartering Co.*, 440 F.Supp. 53, 55 (S.D.N.Y.1977); *Hazell v. Booth Steamship Co., Ltd.*, 436 F.Supp. 561, 564 (S.D.N.Y.1977). The defendant is a Japanese corporation with its principal place of business in Tokyo. The accident occurred in Norway, Norwegian citizens were killed, and this action was instituted by Norwegian plaintiffs. In the absence of any showing of "substantial contacts between the transaction involved in the case and United States," the Court concludes that these plaintiffs cannot state a cause of action under the Death on the High Seas Act.[5]

■■■ Even if the plaintiffs could establish sufficient United States contacts to invoke the Act, a claim based on this statute falls within the admiralty jurisdiction of

---

**5.** The plaintiffs now contend that certain items requested during discovery were not produced by the defendant. Specifically, the plaintiffs seek certain correspondence, financial documents, minutes from Board of Directors meetings, and materials distributed by ANA in New York. Affidavit of David Jaroslawicz, sworn to June 18, 1979, Exhibit B. The defendant, alleging that it has fully complied with Magistrate

Gershon's discovery order, has made a motion for a protective order.

The additional discovery requested is directed solely to proving that ANA is "doing business" in New York. In light of the Court's disposition of the plaintiffs' claims against ANA, no further discovery on this largely irrelevant issue is warranted.

this Court, *see* 46 U.S.C. § 761, and is therefore subject to "[t]he rule recognizing an unqualified discretion to decline jurisdiction in suits in admiralty between foreigners." *Canada Malting Co. v. Paterson Steamships, Ltd.*, 285 U.S. 413, 421, 52 S.Ct. 413, 415, 76 L.Ed. 837 (1932); *see, e. g., Ying Shiue Jyu Fen v. Sanko Kisen (USA) Corp.*, 441 F.Supp. 45, 48 (S.D.N.Y.1977); *De Mateos v. Texaco Panama, Inc.*, 417 F.Supp. 411, 420 (E.D.Pa.1976), *aff'd*, 562 F.2d 895 (3d Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). Of course, the claim could not be entertained if the defendant were not subject to personal jurisdiction in this forum. The lack of contacts between the defendant's activities or the plaintiffs' claims and the United States—which rendered the Death on the High Seas Act inapplicable—also suggests that this Court either cannot exercise jurisdiction over this foreign defendant or should, in its discretion, decline to do so.

█ Although the issue is not free from doubt, it appears that federal jurisdictional principles govern this in personam admiralty action, and thus the minimum contacts required for jurisdiction must be established with the United States, and not necessarily with the state of New York. *See Koupetoris v. Konkar Intrepid Corp., supra*, 535 F.2d at 1395 n.13 (court "leave[s] open" the question whether federal or state law should be applied to determine whether corporate shipowner is "present" in New York and thus amenable to suit under the Jones Act and general maritime law); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) (nationwide service of process authorized by Securities Exchange Act of 1934 is subject to due process constraints of Fifth Amendment; when defendants live in the United States, the minimum contacts requirement is satisfied for "[i]t is not the State of New York but the United States 'which would exercise its jurisdiction over' the defendants"); *Engineering Equipment Co. v. S.S. Selene*, 446 F.Supp. 706, 709 (S.D.N.Y.1978) (constitutionality of admiralty attachment statute determined according to federal law; when "federal court sitting in admiralty attempts to base in personam . .

jurisdiction upon state law . . ., the Fourteenth Amendment would be implicated, and the question of defendants' contacts with the forum state would arise"); *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354, 357 (W.D.Mich.1973) (federal law controls jurisdictional determination in action under Death on the High Seas Act, and critical inquiry is whether defendant has "certain minimal contacts with the United States"); *Scott v. Middle East Airlines Co.*, 240 F.Supp. 1, 4, 5 (S.D.N.Y.1965) (federal law controls jurisdictional determination in action under Death on the High Seas Act; "There should certainly be required a finding that [the defendant] has the necessary contacts with the United States . . . [and] with New York as well"). In *Shaffer v. Heitner*, 433 U.S. 186, 203, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977), the Supreme Court reiterated the rule of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *See World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Rush v. Savchuk*, —— U.S. ——, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). If the plaintiff's injury does not arise out of an activity or transaction conducted in the forum, then the contacts between the corporation and the forum must be "fairly extensive" before the burden of defending a suit there may be imposed upon the corporate defendant. *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971); *see Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *United Merchants and Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. 1078, 1084 (D.Md. 1977).

In *Koupetoris v. Konkar Intrepid Corp., supra*, a Greek citizen brought suit under

the Jones Act, 46 U.S.C. § 688, and general maritime law to recover damages for personal injuries sustained in 1974 while working as a seaman aboard the only vessel owned by the defendant. The accident occurred off the coast of Maryland, and the plaintiff received medical treatment in two United States cities. The defendant, a Liberian corporation whose principal place of business was Athens, maintained "substantial financial ties" in New York including two mortgages, an outstanding letter of credit, and at least one bank account used to pay for replacement of the ship's engine parts and salary advances to crew members. During 1974, the shipowner's New York activities were carried on by New York Agencies, Ltd., which paid for various of the ship's expenses, forwarded funds to the ship's master, appointed husbanding agents, and provided the shipowner with an accounting of collections and payments. In response to the defendant's argument that it was not subject to in personam jurisdiction in the Southern District of New York, the Second Circuit ruled that "there is no question that, taken together, the activity of New York Agencies and the financial ties to New York maintained by the Shipowner more than met the requirement of minimal contacts." 535 F.2d at 1395. The Court stated that this requirement demanded "more than an incidental contact with the state, although the party does not have to be authorized to do business in the state or have offices there." *Id., quoting Grammenos v. Lemos,* 457 F.2d 1067, 1072 (2d Cir. 1972).

A similar standard requiring more than incidental contact with the state was implicitly applied by the courts in *Holt v. Klosters Rederi A/S,* 355 F.Supp. 354 (W.D. Mich.1973), and *Scott v. Middle East Airlines Co.,* 240 F.Supp. 1 (S.D.N.Y.1965). The *Holt* court held that it had personal jurisdiction over a Norwegian corporation sued under the Death on the High Seas Act because the corporation conducted tours embarking from Florida that carried 42% of its passengers, maintained offices in cities in five other states, solicited business from other areas in the United States, and had

several other corporate interests in Florida. The *Scott* court upheld jurisdiction over a Lebanese airline in a Death on the High Seas Act case because the airline conducted promotion and sales activity in the United States, had offices in three American cities, hired sales managers, a tour manager, and secretaries through its New York office, and received 2% of its passenger revenues from New York.

■ The instant action, in contrast to the cases described above, does not appear to involve sufficient contacts to justify the Court's exertion of jurisdiction over the foreign defendant. ANA neither maintains any sales, ticket, or reservation office anywhere in the United States nor engages in any promotional or flight activities within the country. Takizawa Aff. ¶¶ 4–5. In *Del Monte Corp. v. Everett Steamship Corp.,* 402 F.Supp. 237 (N.D.Cal.1973), a case similar in certain respects to the one at bar, a New York corporation brought a maritime and admiralty action against a Panamanian corporation whose principal place of business was in Japan. George P. Bradford, a director and principal officer of the defendant Everett Steamship Corporation, was president of a California corporation located in California. Bradford stated that he "provide[d] the personal office used . . . with respect to the internal communications and internal activities" of the defendant. Bradford's California corporation was advertised as the agency office for the Everett Steamship Corporation. Rejecting the argument that Bradford's presence in the district satisfied the minimum contacts requirement, the court stated the plaintiff had neither proven that its cause of action was connected with defendant's activity within the state nor established that defendant engaged in "substantial commercial activity" that might justify the court's exercising personal jurisdiction over a claim not related to the activity. *Id.* at 241–42. The fact that "defendan[t] enjoys the business advantage of having an executive officer residing and working in [the] state" was deemed to "fal[l] short of the showing that courts usually require to establish personal

jurisdiction over a non-resident corporation." *Id.* at 242. This conclusion is equally applicable to the case before this Court.

The constitutional analysis mandated by *International Shoe* may include consideration of a foreign corporation's relationship with an affiliated corporation in the forum, notwithstanding the maintenance of separate corporate identities. *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 490 (D.Kan.1978). Such a relationship may assume greater significance if the activities of the affiliated corporation benefit the foreign one or if these activities are related to the plaintiffs' claims. See *id.* Even after discovery, the plaintiffs in this case have presented no evidence indicating that ANA's relationship with ANA Americas is a significant factor in the jurisdictional calculation. Their conclusory allegation that ANA Americas, along with ANA, was "responsible for selling and distributing this helicopter to the Norwegian company" is not supported by the affidavits and deposition testimony submitted to the Court. The most concrete piece of information that can be gleaned from Mr. Takizawa's rather opaque testimony regarding the two corporations is that ANA might purchase items in Japan from ANA Ltd. (40% of its stock being owned by ANA) which has acquired the items after they were exported, or perhaps just purchased, by ANA Americas, ANA Ltd.'s wholly owned subsidiary. In short, no precise facts have been established, or even alleged, that would justify this Court's exercise of jurisdiction over ANA on the basis of ANA Americas' presence in New York.

 New York's "doing business" jurisdictional standard is generally considered to require more contacts than the constitutional requirement of minimum contacts. See *Intermeat, Inc. v. American Poultry Inc.*, 575 F.2d 1017, 1022–23 (2d Cir. 1978); *Beja v. Jahangiri*, 453 F.2d 959, 961–62 (2d Cir. 1972); *Jaftex Corp. v. Randolph Mills, Inc.*, 282 F.2d 508, 511 (2d Cir. 1960). It is instructive, however, to examine briefly the facts of this case against the relevant New York precedents. The plaintiffs argue

that the defendant ANA is "doing business" in New York by virtue of the activities conducted by its employee, Mr. Takizawa. In the oft-quoted case of *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917), the New York Court of Appeals stated that while "there is no precise test of the nature or extent of the business that must be done" by the foreign defendant, it must conduct business activities here "not occasionally or casually, but with a fair measure of permanence and continuity." This broad standard was subsequently narrowed in cases in which jurisdiction over a foreign corporation was alleged to exist on the basis of the activities of the corporation's New York agents. *See, e. g., Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958); *Elish v. St. Louis Southwestern Ry.*, 305 N.Y. 267, 112 N.E.2d 842 (1953). According to the standard established in these and other cases, the question to be determined is whether ANA's New York agent "performed activities in addition to mere solicitation of business sufficient to invoke New York's 'solicitation-plus' rule." *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1246 (S.D.N.Y.1977); see *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205 (2d Cir. 1970).

In contrast to the cases relied upon by the plaintiffs, the defendant ANA has no agent soliciting business in New York. *See Marketing Showcase, Inc. v. Alberto-Culver Co.*, 445 F.Supp. 755 (S.D.N.Y.1978); *Bryant v. Finnish Nat'l Airline, supra, Benware v. Acme Chemical Co.*, 284 App.Div. 760, 135 N.Y.S.2d 207 (3d Dep't 1954). Mr. Takizawa performs no promotional or sales activities in the state; his corporate function is relatively narrow and involves only the gathering of financial information and the negotiation of loans. See *New England Laminates Co. v. Murphy*, 79 Misc.2d 1025, 362 N.Y.S.2d 730 (Sup.Ct.1974); *Irgang v. Pelton & Crane Co.*, 42 Misc.2d 70, 247 N.Y.S.2d 743 (Sup.Ct.1964). As noted above, the plaintiffs have failed to demon-

strate that the relationship between ANA and ANA Americas would justify exercising jurisdiction over the former on the basis of the other company's presence in New York.

In sum, the plaintiffs' claims against ANA fall within the admiralty—not diversity—jurisdiction of this Court. This action cannot be brought under the Death on the High Seas Act, however, because there are insufficient contacts between the United States and the transaction giving rise to this suit against the defendant ANA. This lack of contacts also suggests that ANA cannot, or should not, be subject to jurisdiction here. *See Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 450–51. Accordingly, the plaintiffs' claims against ANA are dismissed.[6]

### ANA Americas

■ The plaintiffs may maintain a diversity action against ANA Americas because this defendant is a California corporation, *see* 28 U.S.C. § 1332(a)(2) & (c), and the claims against the non-diverse foreign defendant have been dismissed. *See Kerr v. Compagnie De Ultramar,* 250 F.2d 860, 864 (2d Cir. 1958); *Neeld v. American Hockey League, supra,* 439 F.Supp. at 462.[7]

ANA Americas has made a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(b) or, in the alternative, for an order dismissing the plaintiffs' complaint against it for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In support of its motion ANA Americas has submitted affidavits of Hiroshi Furusawa and Shoji Yuasa, executive vice president and treasurer, respectively, of ANA Americas. Both individuals state that the company has never directly or indirectly acquired, purchased, sold, maintained, distributed, leased, or operated any helicopter since its inception in 1971. Affidavit of Hiroshi Furusawa, sworn to February 20, 1979, ¶ 4; Affidavit of Shoji Yuasa, sworn to February 15, 1979, ¶ 3. ANA Americas also relies on the affidavit of John J. Martin that was submitted in support of the forum non conveniens motion filed by defendants United Technologies and United International. Mr. Martin, a member of the firm representing these two defendants, stated that the helicopter involved in the accident was purchased from United Technologies by ANA; ANA Americas is not mentioned in his description of the transactions preceding the accident. Affidavit of John J. Martin, sworn to January 9, 1979, ¶ 3. On the basis of these affidavits, this defendant contends that the complaint fails to state a cause of action against it and that there is no genuine issue of material fact because ANA Americas did not sell, maintain, distribute, lease, or operate the helicopter involved in the accident.

The plaintiffs argue that the affidavits of Mr. Furusawa and Mr. Yuasa are merely "self-serving declaration[s]" by the defendant's employees that are entitled to "little weight." Statement of Points and Authorities in Opposition to Defendant ANA Americas' Motion to Dismiss ("Plaintiffs' Memorandum II") at 3. Furthermore, they contend, part of Mr. Furusawa's affidavit is not based upon his personal knowledge because he stated that he had discussed the matter with his predecessor in office and other past and present employees. The plaintiffs are also skeptical of Mr. Yuasa's claim that he is familiar with all the books of the company's financial records. Finally, the plaintiffs assert that "all of the records

---

**6.** The Court recognizes that there may be no forum other than Japan where these Norwegian plaintiffs can pursue their claims against ANA. They are not, however, without a remedy. United Technologies, United International, and probably Helikopter Service can be sued in Norway. *See infra.* On the basis of the facts now established or alleged, it appears that the plaintiffs' claims against the manufacturer of the helicopter and the company that owned and operated it at the time of the accident are likely to constitute the crux of their case. If liability is established, these defendants may be able to seek indemnification from ANA.

**7.** Alternatively, the Death on the High Seas Act may apply because the company's principal place of business is in the United States. *See Hellenic Lines Ltd. v. Rhoditis, supra,* 398 U.S. at 309, 90 S.Ct. at 1734.

upon which the affiants rely are solely in defendant's control and, as yet, [they have] not had the opportunity to obtain these documents via discovery." *Id.* at 4. Stating that they have been able to "conduct only limited discovery concerning this defendant," the plaintiffs argue that summary judgment would be inappropriate until there has been "[f]ull discovery of all of the relevant facts." *Id.*

Rule 56(e) provides in part:

When a motion for summary judgment is made and supported as provided in this rule [by affidavits, depositions, or answers to interrogatories], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him

The Second Circuit has frequently emphasized that a party opposing a summary judgment motion cannot merely rely on the allegations in his complaint but must provide factual material that either raises a question regarding the veracity of the movant's claims or presents countervailing facts. *See, e. g., S. E. C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *Beal v. Lindsay*, 468 F.2d 287, 291 (2d cir. 1972); *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972). Even *after* conducting discovery in this case, the plaintiffs have done neither. As noted by the defendant, "[c]onspicuously absent from plaintiffs' papers is any reference to the fact that plaintiffs have already obtained the discovery they sought in connection with . this motion." Reply Memorandum in Support of ANA Americas' Motion to Dismiss Or In The Alternative For Summary Judgment at 2. The plaintiffs' request for discovery in response to the defendant's motion to dismiss was granted by Magistrate Nina Gershon in an Order dated April 13, 1979. Pursuant to that Order, plaintiffs took the deposition of Mr. Takizawa and served written interrogatories on ANA Americas. The defendant's answers and objections were timely served, and the plaintiffs have neither objected to the responses nor served additional interrogatories. Affidavit of Eliot Lauer, attorney for defendant ANA Americas, sworn to May 29, 1979. Contrary to the plaintiffs' assertion, they have had an opportunity to conduct discovery—their quest was just not as fruitful as they had hoped it would be.

Rule 56(f) states that:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The plaintiffs' failure to file an affidavit explaining why they cannot now present countervailing factual contentions is a significant factor favoring summary judgment in this case. *See Beckers v. International Snowmobile Indus. Ass'n*, 581 F.2d 1308, 1311 (8th Cir. 1978), *cert. denied*, 440 U.S. 986, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *Kung v. FOM Investment Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977); *Robin Construction Co. v. United States*, 345 F.2d 610, 614 (3d Cir. 1965). "A defense of ignorance against a motion for summary judgment, given ample time and opportunity to investigate the matters at issue, is insubstantial." *Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Products, Inc.*, 47 F.R.D. 310, 317 (S.D.N.Y.1969).

The affidavits submitted by the defendant ANA Americas are certainly not a model of objectivity or comprehensiveness. But the plaintiffs have not presented a shred of evidence that raises a genuine issue of fact and have failed to explain their inability to do so after having conducted the discovery requested in this case. The defendant's motion for summary judgment is therefore granted.

### United

Defendants United Technologies and United International (hereinafter "United")

have moved to dismiss the plaintiffs' complaint against them on the grounds of forum non conveniens. According to United, "[this] Court should decline jurisdiction of an action involving an accident in European waters between alien plaintiffs and foreign corporations maintaining their principal places of business outside the state of New York." Memorandum in Support of Motion to Dismiss ("United Memorandum") at 6. The plaintiffs, in turn, argue that consideration of all the factors relevant to a forum non conveniens determination demonstrates that retention of the action is warranted. Upon considering these factors, however, the Court concludes that the action should be dismissed subject to the conditions described below.[8]

The principle of forum nonconveniens "presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1946). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. The defendant thus bears the burden of proving that an alternative forum exists and that the case should be dismissed. *Schertenleib v. Traum*, 589 F.2d 1156, 1160 (2d Cir. 1978). In *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 508–09, 67 S.Ct. at 843, the Supreme Court delineated factors that should be considered in resolving a motion based on forum non conveniens.

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. . . .

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Alternative Forum*

The Court is satisfied that Norway is a proper alternative forum in which to adjudicate this controversy. The defendants have agreed (1) to accept service of process in any action brought by the plaintiffs in Norway; (2) to make witnesses and documents available and to litigate the dispute there; and (3) to pay any judgment rendered against it by a Norwegian court.

---

**8.** While the suit against United could be viewed as an action in admiralty, assuming that these claims are cognizable under the Death on the High Seas Act, the Court prefers to treat it as a diversity action since the non-diverse foreign defendant has been removed from the case. *See Kerr v. Compagnie De Ultramar, supra*, 250 F.2d at 864; *Neeld v. American Hockey League, supra*, 439 F.Supp. at 462. Although the Second Circuit has left open the question whether state or federal law governs the application of forum non conveniens in a diversity case, *Schertenleib v. Traum*, 589 F.2d 1156, 1162 n.13 (2d Cir. 1978), the court of appeals recognizes that New York and federal law are basically alike with respect to this doctrine. *Id.; Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378–79 (2d Cir. 1972). *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946).

*Dahl v. United Technologies Corporation,* 472 F.Supp. 696, 699 (D.Del.1979); Affidavit of Edward M. O'Brien, sworn to June 13, 1979, ¶ 3, ("O'Brien Aff.").[9] United has submitted an affidavit of a Norwegian lawyer who states that Norwegian courts would exercise jurisdiction over United and entertain the plaintiffs' claims. Affidavit of Frode Ringdal, sworn to November 13, 1978, ¶ 5 ("Ringdal Aff."). United could be subject to unlimited liability, and "Norway is in the process of developing case law built up around product liability cases." *Id.* ¶¶ 6, 9. Norwegian procedural rules provide for taking the testimony of witnesses not able or required to appear at trial and for demanding production of documentary evidence. The defendants' affiant states that in Norway, "documentary evidence is admissible to a much larger extent than appears to be the case before American courts." *Id.* ¶ 13. The plaintiffs, Norwegian citizens, have presented no evidence indicating that they would not receive a full and fair trial in their own country.[10] Furthermore, even if Norwegian law were less favorable to the plaintiffs' chance of recovery, this Court still has discretion to dismiss the action. *Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 453. The Second Circuit's observation that "a plaintiff rarely chooses to bring an action in a forum, especially a foreign one, where he is less likely to recover," *id.,* seems particularly appropriate to the case at bar.

*Claims and Parties*

The plaintiffs' claims against United allege negligence, strict products liability, and breach of warranty. Obviously, the Court cannot and would not rule on the merits of these claims. Yet "[i]nquiry by the Court as to the integrity of the alleged claims is not foreclosed" because a motion to dismiss cannot be resisted on the basis of specious or unfounded claims. *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y.1970); *see Dahl v. United Technologies Corporation, supra,* 472 F.Supp. at 701. For example, even assuming that the breach of warranty claim is governed by American law, the claim appears to be without merit. The helicopter involved in the accident was delivered to ANA in Connecticut in 1971. If Connecticut law applied to the claim, it would be barred by the Uniform Commercial Code's four year statute of limitations because the cause of action accrued upon delivery. Conn.Gen.Stat. § 42a–2–725; *see Dahl v. United Technologies Corp., supra,* 472 F.Supp. at 701–02. The plaintiffs would fare no better if the Court applied the law of the forum, for in New York a party not in privity with the

---

**9.** *Dahl v. United Technologies Corp., supra,* was a parallel suit instituted in the District Court of Delaware by four of the five plaintiffs in the instant action against the defendant United Technologies, a Delaware corporation. Defendants' offer, described above, was made in that case in the form of an affidavit submitted to the court by Robert H. Arnold, assistant general counsel of United Technologies. Although that affidavit was not submitted to this Court, the defendants have submitted another affidavit stating that they will consent to the same conditions agreed upon in the Delaware action. O'Brien Aff. ¶ 3. Dismissal of an action on forum non conveniens grounds may be conditioned on the defendant's consent to submit to jurisdiction elsewhere and to satisfy any judgment awarded there. *Schertenleib v. Traum, supra,* 589 F.2d at 1162–63; *Grammenos v. Lemos, supra,* 457 F.2d at 1074 n.5. In *Dahl,* Chief Judge Latchum granted the defendant's motion to dismiss on the grounds of forum non conveniens. The Chief Judge stated that:

In sum, this Court sees no reason why these cases, which call for the application of Norwegian law to claims by Norwegian plaintiffs who seek to recover for damages resulting from the crash of a Norwegian helicopter off the coast of Norway, should be heard and decided in the District of Delaware.

472 F.Supp. at 702.

**10.** The Court accepts Mr. Ringdal's description of Norwegian law and judicial procedures. While he and his firm represent the defendants in connection with legal matters arising from the November 1977 helicopter crash, the Court has no reason to doubt the veracity of his statements. Mr. Ringdal has practiced law in Norway for over thirty years, is a partner in an Oslo law firm, has served on numerous legal committees and commissions, and is fluent in English and the Scandinavian languages. Ringdal Aff. ¶ 2. The plaintiffs have offered no evidence contradicting his statements or disputing his authority.

seller has no cause of action for breach of warranty. *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 589–90, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97, 99 (1978).

The plaintiffs contend that their negligence and products liability claims will be governed by United States, as opposed to Norwegian, law. Although it is not determinative, choice of law may be an important consideration in resolving a motion to dismiss based on forum non conveniens. *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 509, 67 S.Ct. at 843; *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880, 881 (2d Cir. 1978); *Olympic Corp. v. Societe Generale, A/S*, 462 F.2d 376, 379 (2d Cir. 1972). According to the plaintiffs, this Court must apply New York choice of law rules in this diversity action, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and in New York "the place of the negligent manufacture or design becomes paramount to the choice of law." Statement of Points and Authority in Opposition to Defendant United's Motion to Dismiss on the Grounds of Forum Non Conveniens ("Plaintiffs' Memorandum III") at 12.[11] While the Court is neither required nor prepared to decide the choice of law question, it should be noted that the New York rule is hardly so unequivocal and it is possible that Norwegian law would be applied. As recently stated by the New York Court of Appeals, "*lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978).

The Court of Appeals recognizes, however, that an exception to this general rule must be recognized in certain airplane crash cases when the place of the wrong is fortuitous. *Id.* For example, in *Cousins v. Instrument Flyers, Inc.*, a New York plaintiff arranged in New York to rent an airplane from the defendant, Instrument Flyers, Inc., a New Jersey corporation whose president lived and worked in New York. The plane was manufactured in Florida by defendant Piper Aircraft, a Pennsylvania corporation. On the day of the accident giving rise to the lawsuit, the plaintiff flew the plane from New Jersey to New York, where he made two separate stops, and was on his way to Michigan when the plane crashed in Pennsylvania. The plaintiff's personal injury action was based on strict products liability. Although the parties and the court proceeded on the assumption that New York law governed the issue, after all the proof had been received at trial plaintiff's counsel suggested that Pennsylvania law applied. The Court of Appeals ruled that it was too late for the plaintiff to switch strategies and that application of New York law was proper since it was the law of the forum and "the law applicable to significant events in this multi-State trip by air." *Id.* at 700, 405 N.Y.S.2d at 443, 376 N.E.2d at 915.

Nowhere in the opinion did the court suggest that the law of Florida—the place where the plane was manufactured—should govern the products liability issue. The gist of the decision was that the law of Pennsylvania, the place of the accident, could be displaced by the law of New York because the case had been tried on that assumption and the accident had numerous New York contacts. The *Cousins* decision certainly does not answer the choice of law question presented by the plaintiffs' case. It does indicate, however, that the plaintiffs' unsupported claim regarding New York choice of law rules is subject to contradiction. Because it is unclear whether the law to be applied in this case militates in favor of or against dismissal, the choice of law factor cannot be viewed as weighing heavily in the plaintiffs' favor.

The plaintiffs contend that they should be allowed to proceed in New York because "this is the only jurisdiction in which all of the defendants can be sued in one action."

---

**11.** The plaintiffs' assumption that the case would be treated as a diversity action was based on their erroneous belief that diversity jurisdiction existed notwithstanding the presence of non-diverse foreign defendants. Only now that those defendants' motions to dismiss have been granted, can the case be viewed as a diversity suit. See discussion *supra*.

Plaintiffs' Memorandum III at 15. This contention is unfounded in light of the Court's decision dismissing the claims against ANA and ANA Americas. Furthermore, as the defendants point out, if the case is litigated in Norway, Helikopter Service, the owner and operator of the helicopter that crashed, could either be made a party to the action or be required to appear. An evaluation of Helikopter Service's responsibility for the accident, either direct or vicarious through the pilot, would appear to be critical in determining whether the accident was caused by a defect in the machine.

*Availability of Evidence and Witnesses*

The plaintiffs assert that "the overwhelming quantity of relevant proof necessary in the causes of action asserted here concern the design and manufacture of the helicopter in question." *Id.* at 7. They allege that all the records concerning the design, manufacture, and flight testing of the helicopter are retained by United at its corporate headquarters. The engineers and personnel responsible for designing and assembling the helicopter are United States citizens. According to the plaintiffs, "[t]he defendant's agreement to make witnesses and documents within its control available in Norway is of little solace" because many of the witnesses were never, or are not now, employed by the defendant. *Id.* at 9. Even if such witnesses, who would not be subject to compulsory process in Norway, voluntarily agreed to testify, the plaintiffs could not bear the cost of transporting them.

Notwithstanding these assertions, the Court disagrees with the plaintiffs' conclusion that "the number of American witnesses far outweighs the possible number of Norwegian witnesses and that the burden upon the plaintiffs if this case were to be transferred to Norway far exceeds that upon the defendants if this court were to retain jurisdiction." *Id.* at 10–11. The defendants' offer to make witnesses and documents available does not appear to be illusory. As noted earlier, Norwegian courts will accept deposition testimony of witnesses not subject to compulsory process. The use

of depositions may also save plaintiffs the cost of transporting witnesses if, as they allege, some necessary witnesses would not be provided by the defendants. Furthermore, the defendants' Norwegian lawyer states that "[f]ailure to produce required documents or information will under our rules on evidence be held against and to the prejudice of the party failing to meet the demand for production." Ringdal Aff. ¶ 13. If the action is litigated in Norway, therefore, the plaintiffs will benefit from both this evidentiary presumption and the defendants' offer to make witnesses and documents available.

The defendants, however, could be seriously prejudiced if the action goes forward in the United States. Important evidence and witnesses remain in Norway and are not subject to the compulsory process of this Court. The recovered portion of the wreckage is located in Norway. *Id.* ¶ 10. The helicopter's maintenance, operational, and flight records, which are kept by Helikopter Service, are also located there. *Id.* The Norwegian Civil Aviation Administration has conducted an investigation into the accident. Deposition of Robert H. Arnold, taken January 23, 1979, at 60. Employees of Helikopter Service and any other company that serviced the helicopter, as well as government investigators, are likely to be important witnesses in the case. Although there were no eyewitnesses to the accident, persons familiar with the area in which the helicopter crashed and with the weather conditions on the day of the accident would be located in Norway. While the plaintiffs contend that the need to translate documents and testimony counsels against dismissal, the argument actually cuts the other way. The Court concludes that the balance is strongly in favor of the defendants because a preponderance of the evidence lies across the Atlantic.

*The Public Interest*

The public interest concerns raised by this forum non conveniens motion include: "[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its

origin"; imposing jury duty "upon the people of a community which has no relation to the litigation"; the "local interest in having localized controversies decided at home"; and, "[i]n cases which touch the affairs of many persons," the importance of "holding the trial in their view and reach rather than in remote parts of the [world] where they can learn of it by report only." *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 508–09, 67 S.Ct. at 843.

Consideration of these factors weighs heavily in favor of dismissal in this case. Not only is the Southern District of New York the quintessential "congested center," but no element of this lawsuit is related to New York in any way. *See Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 (S.D.N.Y.1972). While New York has little or no interest in the litigation, Norway has a substantial interest in having this local accident case—which has affected numerous persons—decided in its own courts. The Court notes that this conclusion is consistent with the decisions reached in *Dahl v. United Technologies Corp.*, discussed *supra* at note 9, and *Pain v. United Technologies Corp.*, No. 78–1319 (D.D.C. May 4, 1979), an action against United Technologies brought by different Norwegian citizens whose decedents had been killed in another helicopter crash off the coast of Norway. On balance, the public interest would be best served by trying the case in the forum where the accident and its investigation occurred, where the wreckage, records, and many witnesses are located, and where the plaintiffs reside.

### Conclusion

The plaintiffs' claims against ANA cannot be pursued as a diversity action. The lack of contacts between the United States and the transaction giving rise to this suit renders the Death on the High Seas Act inapplicable and suggests that ANA cannot, or should not, be subject to jurisdiction in this forum. The claims against this defendant are therefore dismissed. ANA Americas' summary judgment motion is granted because, even after discovery, the plaintiffs have neither presented any evidence demonstrating the existence of a genuine factual issue nor explained their inability to do so. The Court grants United Technologies' and United International's motion to dismiss on the grounds of forum non conveniens on the condition that the defendants (1) submit to jurisdiction in Norway; (2) make all witnesses and documents within their control available in the Norwegian action; and (3) pay any judgment rendered by a Norwegian court.

So ordered.